JUAN CANCIO ORTIZ ROBERTS ET AL., demandantes y recurrentes, *v.* ALFREDO GUILLERMO ORTIZ ROBERTS ET AL., demandados y recurridos.

*Número:* R-72-120    *Resuelto:* 31 de marzo de 1975

*Vicente Santori Coll,* abogado de los recurrentes; *Luis F. Sánchez Vilella* y *Francisco Ponsa Feliu,* abogados de la recurrida Sarah Torres Peralta.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Hay que decidir si un fideicomisario tiene acción de retracto legal contra un extraño que compra la participación

de otro beneficiario en el fideicomiso constituido sobre finca urbana.

En el desarrollo de un fideicomiso constituido por los cónyuges dueños de una finca urbana en el sector Miramar de San Juan, en que se designó fiduciario a su hijo Ernesto Ortiz Romeu y fideicomisarios a este mismo en cuanto al usufructo del inmueble, y a sus cuatro hijos, nietos del fideicomitente, llamados Juan Cancio, Alma Ernestina, Laura Cristina, y Alfredo Guillermo Ortiz Roberts, con participaciones iguales en el capital, el fideicomisario Ernesto vendió su interés (rentas) y otro fideicomisario llamado Alfredo Guillermo también vendió el suyo, a la Lcda. Sarah Torres Peralta. Dentro del octavo día de dicha enajenación los otros tres hermanos Ortiz Roberts ejercitaron contra la compradora la acción de retracto legal de comuneros provista en el Art. 1412 del Código Civil (31 L.P.R.A. sec. 3922) cuyo texto declara:

"El copropietario de una cosa común podrá usar del retracto en el caso de enajenarse a un extraño la parte de todos los demás condueños o de alguno de ellos.

Cuando dos o más copropietarios quieran usar del retracto, sólo podrán hacerlo a prorrata de la porción que tengan en la cosa común."

Por entender que el fideicomiso es institución foránea independiente del orden mayor de regulación de derechos por el Código Civil, el tribunal de instancia denegó la acción de retracto. Expedimos auto para revisar.

El pleito presenta tres aspectos fundamentales, a saber: 1) utilidad social del retracto; 2) tipo de copropiedad a que sirve; y 3) su viabilidad en el fideicomiso, figura jurídica incorporada a nuestro Código Civil, que trae credenciales del Derecho anglosajón.

—I—

Hay quienes ven el origen del retracto en palabras del Señor en el Capítulo XXV del Levítico: "Habló Yahvé a

Moisés en el monte Sinaí y dijo: . . . Si se empobreciere tu hermano y vendiere algo de su posesión, vendrá su rescatador, el pariente suyo más cercano, y rescatará lo vendido por su hermano. . . . Si uno vendiere una casa de habitación en ciudad amurallada, durará su derecho de rescatarla hasta cumplirse el año de su venta."

El Código Civil desalienta y repudia la comunidad, fuente de desavenencias que dificultan su administración y degenera en obstáculo al fomento de la propiedad, la industria y la riqueza. Manresa, *Comentarios al Código Civil Español*, Tomo 10, Vol. 1, págs. 508 y ss., ed. 1969; Scaevola, *Código Civil*, Tomo 23, Vol. 2, págs. 441 y ss., ed. 1970. Hacia el objetivo de extinguir la copropiedad se dirigen el Art. 333 (31 L.P.R.A. sec. 1278) que reconoce en todo condueño la plena propiedad de su parte pudiendo en su consecuencia enajenarla, cederla o hipotecarla; y el Art. 334 al declarar que ningún copropietario está obligado a permanecer en la comunidad, y que cada uno de ellos podrá pedir *en cualquier tiempo* que se divida la cosa común, expresión ésta que concreta la imprescriptibilidad de las acciones para solicitar la división de la propiedad común. En línea con ese diseño legislado, el retracto busca como efecto final la extinción de la comunidad, o por lo menos la reducción del número de condóminos, disminuyendo la pluralidad de derechos sobre un mismo inmueble. Scaevola, *ibid.*, pág. 487. Castán destaca el mismo valor social del retracto de comuneros que llama fundado en la conveniencia de que no se perpetúe el estado de proindivisión y condominio, considerado como antieconómico y antijurídico, por las dificultades y pugnas a que da lugar entre los dueños. Castán, *Derecho Civil Español, Común y Foral*, Tomo 4, págs. 161–2, ed. 1961. Idéntica finalidad de lograr el cese del estado de indivisión, le atribuye Puig Brutau, o la más amplia de favorecer la reunión de facultades con respecto a cosas determinadas con el fin de eliminar toda ocasión para posibles conflictos de in-

tereses. Puig Brutau, *Fundamentos de Derecho Civil*, Tomo 3, pág. 603, ed. 1953.

—II—

Este retracto de comuneros tiene, por tanto, su esfera de acción y aplicación en la comunidad de bienes que el Art. 326 del Código Civil (31 L.P.R.A. sec. 1271) identifica "cuando la propiedad de una cosa *o de un derecho* pertenece proindiviso a varias personas." La sentencia de 20 de marzo de 1929 del Tribunal Supremo de España sostiene que dicha definición de comunidad parte en todo caso de la base del derecho dominical, tipo del *in re* tal como lo entiende el Art. 348 Español (280 nuestro—31 L.P.R.A. sec. 1111) como facultad de gozar y disponer de la cosa, porque la comunidad de bienes no es sustancialmente diferente de la propiedad individual, sino sólo una variación o accidente que origina la simultaneidad de varios en el mismo derecho, o sea, una forma de manifestación del dominio con los dos elementos de unidad en la cosa y pluralidad de sujetos, los cuales tengan, aparte de la porción ideal que les corresponda, iguales facultades dominicales.

El concepto de dominio hace tiempo perdió la rigidez monolítica tejida alrededor de la facultad de enajenación que al dueño le señala el Art. 280. A la desintegración del concepto unitario, impulsada por un sentido social y por el surgimiento de múltiples clases de propiedad con nuevos perfiles y rasgos peculiares, [1] ha seguido una nueva definición del dominio,

---

[1] "Atinadamente observa Josserand que 'es preciso hablar hoy no ya de la *propiedad,* sino de las *propiedades.* Cada categoría de bienes implica una forma de aprobación especial para ella; no se tienen sobre una finca rústica los mismos derechos ilimitados que se ejercen sobre el mobiliario, un libro, un sombrero o un traje; la propiedad de una obra artística es cosa completamente distinta que la de una casa o de un cargo; el dominio público del Estado obedece a otros estatutos que los patrimonios privados. . . . No hay propiedad; hay propiedades, porque el interés de la sociedad exige que la apropiación de los bienes se sujete a estatutos en armonía con los fines perseguidos, los cuales varían mucho: el derecho de propiedad es

en la cual coinciden Roca, Castán y Puig Brutau como "el derecho real que atribuye a su titular el poder o señorío más amplio posible sobre una cosa corporal, dentro de límites institucionales, con carácter plenamente autónomo, perpetuo (en principio), elástico, y, en parte, de contenido discriminable." Castán, *ibid.*, pág. 108.

La diversificación de regímenes jurídicos de la propiedad tiene como inevitable resultado la expansión de la acción de retracto de comuneros iniciada desde fines del siglo pasado por interpretación del Tribunal Supremo Español, que declara copropietarios *de cosa común* al que tiene derecho de siembra y aquél a quien pertenece el arbolado, porque los derechos de ambos dueños están subordinados y relacionados de modo que el uno en las operaciones de cultivo nada puede hacer que redunde en menoscabo o detrimento de los árboles, ni tampoco es lícito al otro, al servirse de ellos, impedir, entorpecer o perjudicar la explotación agrícola del suelo; y dedujo de ello que, debiendo calificarse de copropietarios de cosa común al dueño del suelo y al del arbolado, es manifiesta la procedencia del retracto establecido en el Art. 1522 del Código Civil cuando alguno de ellos enajena su respectivo derecho. (S. 9 Marzo 1893); que los disfrutes de hierbas, pastos y agostaderos por un lado, y el de siembra en determinados sitios por otro, sobre una misma cosa, si no constituyen una comunidad en el sentido del Art. 392 (Art. 326 de P.R.), engendran una relación jurídica análoga entre los legítimos explotadores de la heredad, que autoriza reputarlos, para los efectos del retracto, dados los fines económicos de esta institución, como condueños copropietarios de una cosa común. (S. 9 Julio 1903); principio que se reitera en Sentencia de 6 de julio de 1920. (²) Manresa

---

uno de los más flexibles y de los más variables que figuran en las diferentes categorías jurídicas; su plasticidad es infinita.' " Castán, Tomo 2, Vol. 1, pág. 104, ed. 1971. (Énfasis en el original.)

(²) A este desarrollo jurisprudencial del retracto en su clásica misión de integrar el dominio, comenta Castán:

"Aunque desde el punto de vista técnico la doctrina del Tribunal

extiende a cosa mueble la acción de retracto y llama la subrogación su nervio y entraña al declarar:

"No encontramos nosotros resquicio alguno por donde deba limitarse en nuestro Código el sentido de la palabra *cosa* a las llamadas inmuebles, a pesar de la respetable opinión de García Goyena; de donde deducimos que lo prudente y acertado es interpretar esa palabra en toda la amplitud de su significación, y, por lo tanto, considerar que la definición legal del artículo 1521, igualmente se refiere a los muebles que a los inmuebles . . . entendemos que siempre que se trate de una transmisión de dominio cuya especial naturaleza no impida la subrogación, que es sustancia del derecho que estudiamos, el retracto podrá ejercerse provechosamente." Manresa, *Comentarios al Código Civil Español*, Tomo X, Vol. 1, Sexta ed. (1969), págs. 496 y 497. (Énfasis en el original.)

—III—

■ A la luz de esta evolución doctrinal del concepto de copropiedad que ha establecido la procedencia de la acción de retracto entre partes cuyas relaciones jurídicas son análogas a la comunidad de bienes, ha de estimarse el derecho de los tres fideicomisarios de la casa en Miramar a retraer la participación en el fideicomiso vendida por otro hermano a una extraña.

El fideicomiso lo define el Art. 834 del Código Civil (31 L.P.R.A. sec. 2541) como "mandato irrevocable a virtud del cual se trasmiten determinados bienes a una persona, llamada

---

Supremo violente el concepto de la copropiedad, hay que reconocer que la asimilación hecha por aquél tiene, desde el punto de vista práctico, una doble ventaja, que apunta Manresa:

1.ª La de permitir que ciertas formas de explotación de la propiedad que en rigor constituyen desmembraciones o división en varias personas de las facultades propias del dominio, y que no son objeto de expresa reglamentación legal en otros lugares del Código, encuentren preceptos por los que regirse.

2.ª La de facilitar la consolidación de la propiedad individual, poniendo término, mediante la aplicación del retracto, a esas situaciones anormales de explotación separada de un mismo terreno." Castán, *Derecho Civil Español, Común y Foral*, To. 2, Vol. 1, pág. 342, ed. 1971.

fiduciario, para que disponga de ellos conforme lo ordene la que los trasmite, llamada fideicomitente, a beneficio de este mismo o de un tercero llamado fideicomisario." Salmond ve el fideicomiso como propiedad dual (*double ownership*) entre fiduciario y fideicomisario; (³) Pound, a su vez dictamina: "A mi juicio la constitución de un fideicomiso crea: (1) un derecho *in personam* contra el fiduciario, y (2) un derecho en equidad sobre la cosa (*equitable right in rem*) en el beneficiario. El derecho *in personam* contra el fiduciario se funda en el principio de deber que deriva de una relación de confianza desde que por transacción legal se acepta el cargo de fiduciario. Pero la analogía de fideicomiso en el segundo sentido se ha aplicado por las cortes de equidad en términos generales a relaciones de confianza. De modo que siempre que una cosa (*res*) está envuelta en tales relaciones los derechos que las afectan se consideran derechos en equidad sobre la cosa (*equitable rights in rem*)." Pound, *Jurisprudence*, (1959), Tomo V, pág. 240.

Abona al concepto de copropiedad en el fideicomiso el derecho extendido tanto al dueño original fideicomitente como al fideicomisario para solicitar en procedimientos sumarios la protección de los bienes fideicomitidos contra pérdida o menoscabo, y la sustitución o destitución del fiduciario. Arts. 858 y 870 del Código Civil (31 L.P.R.A. secs. 2565, 2577). Esas facultades son tan peculiares al dominio como las conferidas al fiduciario por disposición del Art. 865 (31 L.P.R.A. sec. 2572) situación que engendra un dominio dividido entre éste y los fideicomisarios y cuya relación entre sí resulta análoga a la comunidad de bienes. Así Pomeroy atribuye al fideicomiso la característica esencial de dominio compartido (*double ownership*) por fiduciario y beneficiario. Pomeroy, *Equity Jurisprudence*, Tomo I, sec. 149, pág. 202, ed. 1941. Scott rati-

---

(³) Salmond, *Jurisprudence* (1902), sec. 91, según citado por Pound, *supra*.

fica ese criterio de dominio dividido. 1 Scott, *On Trusts*, sec. 1, ed. 1967. Y la relación interna entre los beneficiarios se describe como comunidad (*joint tenants, tenants in common*), 2 Scott, *On Trusts*, sec. 113; Bogert, *Trusts & Trustees*, sec. 181, pág. 180; Merryman, Profesor, Stanford Law School, en *Ownership and Estate*, 48 Tul. L. Rev. (1974), págs. 916–925. Hay en el fideicomisario un derecho de propiedad en el inmueble, latente o diferido si se quiere, pero no menos respetable, por la duración del mandato del fiduciario a quien se le prohibió por el fideicomitente vender, enajenar o gravar la casa de Miramar de modo que a su muerte se cumpla el fin último y esencial del mandato, que es a la vez destino final de la cosa: advenimiento de los hermanos Ortiz Roberts como dueños "exclusivos" de la misma.

El retracto no es recurso extraño al fideicomiso en su medio jurídico original. Se reconoce al fideicomisario una acción para recuperar la cosa objeto de fideicomiso de una tercera persona. Bogert, *Trusts & Trustees*, sec. 866, pág. 47 (1962).

El fideicomiso, incorporado físicamente a nuestro Código Civil como Ley Núm. 41 de 23 de abril de 1928, no ha de ser híbrido impregnable, aislado de la acción y efecto de los ordenamientos mayores que integran nuestro sistema de derecho civil común. Acogida dicha institución como aporte que enriquece nuestro régimen jurídico, debe despojarse de todo signo de extranjería e integrarse en total acoplamiento al Derecho Civil patrio, pues como se ha demostrado, aunque de troncos distintos, el retracto y el fideicomiso se entrelazan en las copas.

Los hermanos Ortiz Roberts tienen derecho y causa de acción para retraer la participación e interés en el fideicomiso que su hermano Alfredo Guillermo vendió a una extraña.

*Se dictará sentencia declarando con lugar la demanda de retracto legal de comuneros y se remitirá el expediente al*

636

tribunal de instancia para que allí se cumplan los trámites consistentes con esta opinión.

La sentencia revisada ha de ser revocada.

El Juez Presidente, Señor Trías Monge, y el Juez Asociado Señor Rigau, no intervinieron.