PROVIDENCIA RIVERA OCASIO, demandante y peticionaria, *v.* SUCESIÓN DE JOSÉ M. PÉREZ RIVERA, compuesta por JOSÉ LUIS PÉREZ PADILLA, IRIS NEREIDA PÉREZ PADILLA y JASON PÉREZ PADILLA, demandados y recurridos.

*Número:* CC-2003-608          *Resuelto:* 30 de junio de 2005

*Harry Anduze Montano* y *Héctor A. Sostre Narváez,* abogados de la parte peticionaria; *Gil de la Madrid Pérez* y *Marisel Peña Senati,* abogados de la parte recurrida.

## SENTENCIA

Mediante el recurso de *certiorari* ante nos, la peticionaria solicita que revisemos una sentencia emitida por el entonces Tribunal de Circuito de Apelaciones de 29 de mayo de 2003. En virtud del dictamen recurrido, el foro intermedio apelativo revocó una orden dictada por el Tribunal de Primera Instancia que, entre otras cosas, había declarado no ha lugar una moción de desestimación por falta de ju-

risdicción *in personam* presentada por los aquí recurridos, Sres. José Luis y Jason Pérez Padilla. El tribunal intermedio apelativo dio a la peticionaria por desistida *con perjuicio* de su reclamación contra los recurridos por ésta haber incumplido con lo dispuesto por la Regla 4.3(b) de Procedimiento Civil.[1] No atendió el asunto que le fue planteado por la parte demandada de autos, relativo a la nulidad del emplazamiento mediante edictos y a la falta de jurisdicción del Tribunal de Primera Instancia sobre su persona.

## I

El 1ro de diciembre de 2000, la Sra. Providencia Rivera Ocasio (señora Rivera Ocasio) instó ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, una demanda sobre división de comunidad de bienes contra la sucesión de José M. Pérez Rivera, compuesta por sus hijos José Luis, Jason e Iris Nereida, todos de apellidos Pérez Padilla. En breve síntesis, alegó haber mantenido por espacio de diecisiete años una relación pública de concubinato, a manera de matrimonio, con el causante de los codemandados, a la que contribuyó con su esfuerzo y trabajo a la creación de una comunidad de intereses económicos entre ambos. En razón de ello, solicitó que se le declarara acreedora en un cincuenta por ciento de las ganancias acumuladas durante el concubinato, estimadas en trescientos mil dólares, y que se le entregara dicha participación. Ese mismo día la Secretaría del Tribunal de Primera Instancia expidió el emplazamiento dirigido a la codemandada Iris Nereida Pérez Padilla.[2] La parte demandante no sometió en aquel entonces, para su expedición, los proyectos de emplazamiento dirigidos a los restantes miembros de la sucesión, los codemandados José Luis y Jason Pérez Padilla. Ello porque, a pesar de estar al tanto de que éstos vivían

---

[1] 32 L.P.R.A. Ap. III.

[2] El referido emplazamiento fue diligenciado personalmente el 10 de diciembre de 2000.

en Estados Unidos, alegadamente desconocía sus respectivas direcciones residenciales.

Junto a la demanda, y en aseguramiento de la sentencia que pudiera recaer a su favor, la señora Rivera Ocasio acompañó una solicitud de embargo sobre determinados "bienes comunes" depositados en el Banco Santander, sucursal de Bayamón Center. El 13 de diciembre de 2000, el foro primario acogió la petición de la demandante, y dictó una orden de embargo sin la celebración de una vista previa.(3)

Con fecha de 2 de enero de 2001, la codemandada Iris Nereida Pérez Padilla presentó su contestación a la demanda de autos, para negar las alegaciones principales de ésta. A la par, reconvino contra la parte demandante.(4) Tras varios trámites procesales, el 28 de junio de 2001 la codemandada Pérez Padilla compareció ante el Tribunal de Primera Instancia para solicitar la desestimación de la demanda por falta de parte indispensable.(5) Adujo, *inter alia*, que la parte demandante ni siquiera había solicitado la expedición de los emplazamientos a los restantes componentes de la sucesión, quienes son "partes indispensables en el pleito". Sostuvo, asimismo, que no había "justa

---

(3) Insatisfecha con el embargo trabado, la codemandada Pérez Padilla presentó oportunamente una moción de reconsideración, la cual fue discutida durante una vista celebrada el 8 de junio de 2001. En igual fecha, el Tribunal de Primera Instancia expidió una orden en la que redujo el monto del embargo a la mitad, liberando así la otra mitad de los fondos a favor de los hijos del causante.

Aún inconforme, el 18 de julio de 2001 la codemandada acudió ante el entonces Tribunal de Circuito de Apelaciones vía recurso de *certiorari*. Mediante la Sentencia de 31 de julio de 2002, el foro intermedio apelativo revocó la orden allí recurrida y levantó el embargo sobre los bienes en cuestión. Al así resolver, sostuvo lo siguiente: "Lo dispuesto en esta sentencia no es óbice para que el tribunal *a quo*, de así solicitarlo la parte interesada, señale una vista para entender en una solicitud de embargo preventivo siempre y cuando se cumpla con el procedimiento establecido en la[s] Regla[s] 56.1, 56.2 y 56.3 de Procedimiento Civil, *supra. Previo a ello, las partes interesadas deberán haber sido emplazadas conforme a derecho.*" (Énfasis suplido.)

Contra dicha sentencia la parte demandante interpuso ante nos una petición de *certiorari*, acompañada de una moción en auxilio de nuestra jurisdicción. Ambas fueron declaradas "sin lugar" mediante Resolución de 6 de septiembre de 2002, notificada a las partes el 10 de septiembre del mismo año. Véase Apéndice de la Petición de *certiorari* (Apéndice), págs. 106–109, 112–115, 119–121, 128–129, 136–138, 143–146 y 165–173.

(4) La señora Rivera Ocasio contestó la reconvención en su contra el 23 de mayo de 2001.

(5) Apéndice, págs. 150–153.

causa" para la demora en que incurrió la parte actora en solicitar y diligenciar los referidos emplazamientos.

Transcurridos más de siete meses desde la interposición de la demanda, el 3 de julio de 2001 la parte demandante respondió con una solicitud al foro primario para que extendiera el término reglamentario de seis meses provisto por la Regla 4.3(b) de Procedimiento Civil, *supra*, para diligenciar los emplazamientos a los codemandados José Luis y Jason Pérez Padilla.[6] Arguyó que aún desconocía las direcciones residenciales de éstos, a pesar de requerir tal información de su hermana, la codemandada Iris Nereida Pérez Padilla. De paso, anticipó que, de no obtener la información en cuestión, habría de solicitar una autorización al tribunal para realizar los referidos emplazamientos mediante edictos. Por último, procuró una prórroga para replicar a la moción de desestimación por falta de parte indispensable. El 23 de agosto de 2001, el Tribunal de Primera Instancia concedió ambas prórrogas a la parte demandante.[7] Con respecto a la solicitud de desestimación presentada por la codemandada Pérez Padilla, dicho foro le otorgó un término de veinte días a la demandante para que respondiera.

Así las cosas, mediante comunicación escrita de 30 de agosto de 2001, la representación legal de la codemandada Pérez Padilla le proveyó finalmente a la demandante las direcciones exactas de los coherederos demandados, no residentes en Puerto Rico.[8] A pesar de ello, no fue sino hasta el 4 de septiembre de 2002, esto es, casi un año después de expirada la prórroga concedida para diligenciar los emplazamientos en cuestión, que la parte demandante presentó ante el foro primario una moción para emplazar mediante la publicación de edictos a los Sres. José Luis y Ja-

---

[6] En específico, solicitó un plazo adicional de treinta días a ser contados desde la fecha cuando la codemandada Pérez Padilla le notificó finalmente las direcciones residenciales de sus hermanos.

[7] Véase las órdenes de 23 de agosto de 2001, archivadas en autos el 30 de agosto del mismo año. Apéndice, págs. 176–177.

[8] Apéndice, pág. 174.

son Pérez Padilla.[9] En apoyo de su solicitud, argumentó que no había actuado dentro del término de la prórroga concedida, pues entendía que los procedimientos ante el foro primario estaban paralizados; ello, porque a la fecha de la concesión de la prórroga, el entonces Tribunal de Circuito de Apelaciones aún no había resuelto la controversia relativa a la falta de jurisdicción sobre los señores Pérez Padilla ni el asunto sobre la validez de la orden de embargo dictada *ex parte*.[10] El 16 de septiembre de 2002, la codemandada Iris Nereida Pérez Padilla replicó a la solicitud de la parte demandante, reafirmándose en su planteamiento de que la demanda debía desestimarse por falta de parte indispensable. Sobre este particular, señaló que habían decursado casi dos años y nueve meses desde la presentación de la demanda sin que la parte demandante trajera ante la jurisdicción del tribunal a partes indispensables en el pleito. Sostuvo, además, que la señora Rivera Ocasio no había demostrado "justa causa" para no solicitar desde un principio la expedición de los emplazamientos a los otros codemandados ni para procurar una prórroga para su diligenciamiento después de vencido el término reglamentario de seis meses. El 19 de septiembre de 2002 la parte demandante se opuso a la réplica de la codemandada Pérez Padilla. Reiteró que había considerado "razonable y prudente" esperar por la sentencia del foro intermedio apelativo para entonces continuar con las gestiones encaminadas a emplazar a los restantes codemandados, no residentes en Puerto Rico.[11]

Examinados los escritos de las partes, el 9 de octubre de 2002 el Tribunal de Primera Instancia ordenó[12] la expedi-

[9] Íd., págs. 178–180.

[10] La parte demandante, aquí peticionaria, se refiere al recurso de *certiorari* que presentara la codemandada Pérez Padilla ante el foro intermedio apelativo, en el que solicitó la revocación de la orden del Tribunal de Primera Instancia que mantuvo, aunque en una menor cuantía, el embargo trabado. Véase el esc. 3.

[11] Apéndice, págs. 192–194.

[12] Véase la orden de 9 de octubre de 2002, notificada a las partes el 16 de octubre siguiente. Apéndice, págs. 202–203. La codemandada Iris Nereida Pérez Pa-

ción de los emplazamientos mediante edictos dirigidos a los codemandados José Luis y Jason Pérez Padilla, los que fueron publicados finalmente el 23 de octubre de 2002 en el periódico *El Nuevo Día*. Una copia de la demanda de autos, del emplazamiento mediante edicto, de la orden que los autorizó y del edicto publicado les fueron notificadas oportunamente a los señores Pérez Padilla a sus últimas direcciones conocidas.

Luego de varios incidentes procesales, el 21 de noviembre de 2002 los codemandados José Luis y Jason Pérez Padilla comparecieron por primera vez ante el Tribunal de Primera Instancia y, sin someterse a su jurisdicción, solicitaron la desestimación de la demanda entablada en su contra por falta de jurisdicción *in personam*.(13) Arguyeron, *inter alia*, que la solicitud para emplazarles mediante edictos fue presentada fuera del término reglamentario de seis meses prescrito por la Regla 4.3(b) de Procedimiento Civil,(14) *supra*, y como si fuera poco, luego de expirar la prórroga otorgada inicialmente por el foro primario para diligenciar sus emplazamientos. De igual forma, plantearon que: (1) los fundamentos aducidos por la demandante para solicitar la ampliación del plazo para el diligenciamiento de los emplazamientos "a todas luces" no satisfacían las exigencias impuestas por la Regla 4.3(b), *supra*, y su casuística interpretativa; (2) la demandante había condicionado el emplazamiento de los allí comparecientes a la ayuda de la codemandada Pérez Padilla, a pesar de que un demandado no viene en forma alguna a cooperar con el demandante a esos fines, y finalmente, (3) *el incumplimiento con los requisitos estatutarios, tanto en la solicitud de emplazamiento mediante edictos como en la orden del foro primario que los autorizó, acarreaba la nulidad del*

---

dilla presentó oportunamente una moción de reconsideración, pero el foro primario la declaró "sin lugar".

(13) Apéndice, págs. 12–20.

(14) Respecto a este extremo, señalaron que la demandante solicitó los referidos emplazamientos casi dos años después de presentada la demanda, y tras un año y cuatro meses de haber expirado el término reglamentario para emplazarles.

*edicto publicado y privaba al Tribunal de Primera Instancia de jurisdicción sobre sus personas.* Sobre este último asunto, cuestionaron que la parte demandante no hubiera presentado, conjuntamente con su solicitud de emplazamientos mediante edictos, una declaración jurada acreditativa de las diligencias efectuadas para emplazarles ni hubiera jurado su demanda.([15]) El 10 de diciembre de 2002, la parte demandante se opuso a la referida solicitud de desestimación y, el 16 de diciembre siguiente, los señores Pérez Padilla replicaron al escrito en oposición.

Estando pendiente ante el foro primario la solicitud de desestimación, el 20 de diciembre de 2002 la parte demandante solicitó al referido foro que le anotara la rebeldía a los codemandados José Luis y Jason Pérez Padilla. Alegó que éstos no le habían notificado su contestación a la demanda dentro del plazo de treinta días de haberse publicado el edicto. Los señores Pérez Padilla se opusieron.

Analizadas las posiciones de ambas partes, el Tribunal de Primera Instancia declaró "sin lugar" la moción de desestimación presentada por los señores Pérez Padilla y, simultáneamente, les anotó la rebeldía. Así lo dispuso en su Orden de 17 de enero de 2003.([16])

Insatisfechos con las determinaciones del foro primario, el 20 de febrero de 2003 los señores Pérez Padilla acudieron ante el entonces Tribunal de Circuito de Apelaciones mediante una petición de *certiorari*.([17]) El 29 de mayo de

---

([15]) Apéndice, pág. 240.

([16]) El archivo en autos de copia de su notificación a las partes se efectuó el 22 de enero de 2003. Apéndice, pág. 40.

([17]) Señalaron, entre otras cosas, que el Tribunal de Primera Instancia había incidido al: (i) "no desestimar la causa de acción en contra de los peticionarios, por falta de jurisdicción *in personam*"; (ii) "permitir el emplazamiento por edictos de los peticionarios, a casi dos años de presentada la Demanda y a más de un año y seis meses de haber expirado el término legal para emplazar, cuando de los autos surgía que desde un principio la demandante conocía que los peticionarios residían fuera de Puerto Rico y nunca controvirtieron esa realidad fáctica"; (iii) "permitir el emplazamiento por edicto de los peticionarios fuera del término legal, cuando de la prueba de la demandante surgía que más de un año antes de solicitar emplazar por edictos, tenía conocimiento de la dirección exacta de los demandados"; (iv) "permitir el em-

2003, el foro intermedio apelativo expidió el auto solicitado y dictó una sentencia revocatoria[18] de las órdenes recurridas. Al así proceder, resolvió que los allí peticionarios habían sido emplazados tardíamente y que la razón aducida por la parte demandante para extender el término de seis meses prescrito por la Regla 4.3(b), *supra, ya expirado al momento de solicitar la prórroga*, "resultaba insuficiente" en vista de que un demandado no está obligado a cooperar con el demandante en el diligenciamiento del emplazamiento. Ante la "ausencia de justa causa", concluyó que el foro primario no debió ampliar el plazo para diligenciar los emplazamientos de los señores Pérez Padilla.

En esa misma línea, el foro intermedio apelativo sostuvo lo siguiente:

> Surge de autos que inmediatamente luego de haber sido concedida la prórroga, específicamente desde el 30 de agosto de 2001, la recurrida ya conocía las direcciones de los codemandados peticionarios. Aun así dejó transcurrir la prórroga ya que no fue hasta el 23 de octubre de 2002 que tramitó mediante edictos la demanda a los peticionarios. En esta ocasión la recurrida no adujo razón válida que justificara la tardanza de más de un año para entonces proceder a emplazar.[19]

En definitiva, el tribunal intermedio apelativo concluyó que la demandante no había desplegado diligencia razonable para emplazar a los restantes miembros de la sucesión

---

plazamiento por edicto, en ausencia de la presentación de una declaración jurada con la solicitud y en ausencia de una Demanda Juramentada"; (v) "permitir el emplazamiento por edicto, mediante una Orden que expresa haber examinado documentos que acompañaron la solicitud de dichos emplazamientos, cuando de los autos surgía que la solicitud se acompaño del proyecto de orden que firmó el juez y de los proyectos de emplazamientos por edictos, lo que resultaba insuficiente en Derecho para autorizar los emplazamientos", y (vi) "permitir la publicación de un edicto que, de su faz, no cumplía con los preceptos de la Regla 4.5 de Procedimiento Civil". Apéndice II de la Petición de *certiorari*, págs. 21–22.

[18] El archivo en autos de copia de su notificación a las partes se efectuó el 6 de junio de 2003. Véase Apéndice, pág. 45.

[19] Apéndice, pág. 45.

Pérez Padilla *dentro de ninguno* de los plazos concedidos. En consecuencia, *dio por desistida con perjuicio a la demandante de su reclamación en cuanto a los allí peticionarios.* El Tribunal de Circuito de Apelaciones no atendió ni discutió los restantes errores señalados, incluyendo el relativo a la alegada nulidad del emplazamiento mediante edictos, ya que consideró que dicha determinación disponía de por sí de la controversia medular. Oportunamente, la demandante de autos solicitó reconsideración, sin éxito.[20]

En desacuerdo con la sentencia del foro intermedio apelativo, el 30 de julio de 2003 la demandante de autos acudió oportunamente ante nos mediante el presente recurso de *certiorari.*[21] Formuló los señalamientos de error siguientes:

### ERROR I
*Erró, por ser contrario a derecho, el Tribunal de Circuito de Apelaciones al decretar un no ha lugar el 23 de junio de 2003, notificada el 30 de junio de 2003, a una moción de reconsideración a una sentencia del 29 de mayo de 2003, notificada el 6 de junio de 2003, en la que revoca unas órdenes del Tribunal de Primera Instancia y en consecuencia decreta a la demandante-peticionaria por desistida con perjuicio de su acción contra los peticionarios José Luis y Jason Pérez Bonilla [sic], conforme lo dispuesto en la Regla 4.3(b) de Procedimiento Civil.*

### ERROR II
*Erró el Honorable Tribunal de Primera Instancia al decretar una sentencia contraria a la equidad y la justicia y revocando la facultad discrecional del Tribunal de Primera Instancia para prorrogar el diligenciamiento del emplazamiento bajo las circunstancias de este caso.*[22]

Mediante Resolución de 10 de octubre de 2003, expedimos el auto solicitado. Ambas partes han comparecido me-

---

[20] Orden de 23 de junio de 2003, archivada en autos el 30 de junio del mismo año. Apéndice, págs. 66–67.

[21] La parte demandada de autos no acudió ante nos con relación a la falta de atención por el Tribunal de Circuito de Apelaciones de su planteamiento sobre nulidad del emplazamiento mediante edictos.

[22] Petición de *certiorari*, págs. 5–6.

diante sus respectivos alegatos y, con el beneficio de sus argumentos, resolvemos el asunto traído ante nuestra consideración.

## II

*Se revoca la sentencia recurrida dictada por el tribunal intermedio apelativo en cuanto dio por desistida con perjuicio la demanda de autos, a tenor con la Regla 4.3(b) de Procedimiento Civil de Puerto Rico, supra. Se ordena, la devolución del caso al Tribunal de Primera Instancia para la continuación de los procedimientos en conformidad con lo aquí resuelto.*

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Rivera Pérez emitió una opinión de conformidad.

(*Fdo.*) Aida Ileana Oquendo Graulau
*Secretaria del Tribunal Supremo*

— O —

Opinión de conformidad emitida por el Juez Asociado Señor Rivera Pérez.

El emplazamiento es el mecanismo procesal mediante el cual se le notifica adecuada y formalmente al demandado, en virtud de las garantías mínimas del debido proceso de ley, que se ha instado una acción judicial en su contra. De esta forma, el foro primario adquiere efectivamente jurisdicción sobre la persona del demandado, quien entonces quedará obligado por el dictamen que se emita eventualmente. Es a través del emplazamiento que se garantiza de forma óptima el derecho que le asiste a todo demandado a comparecer a juicio, ser oído y presentar prueba a su favor, de así estimarlo conveniente y previo a

238

que se adjudiquen sus derechos.(¹) Este Tribunal ha resuelto en múltiples ocasiones que para que el emplazamiento sea efectivo en su propósito, deberá tener una probabilidad razonable de informar y notificar al demandado sobre la acción instada en su contra, de manera tal que éste pueda tomar una decisión informada sobre si desea o no comparecer para defenderse.(²)

*Dado que el emplazamiento constituye un elemento fundamental del derecho constitucional a un debido proceso de ley, sus requisitos, estatuidos en la Regla 4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, deben cumplirse estrictamente.(³) Su inobservancia priva al tribunal de jurisdicción sobre el demandado para considerar y resolver la controversia planteada ante sí.(⁴)*

Examinemos lo dispuesto por la Regla 4.3(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III, puesto que resulta de particular relevancia al caso que nos ocupa:

> *El emplazamiento será diligenciado en el término de seis (6) meses de haber sido expedido. Dicho término sólo podrá ser prorrogado por un término razonable a discreción del tribunal si el demandante demuestra justa causa para la concesión de la prórroga y solicita la misma dentro del término original. Transcurrido el término original o su prórroga sin que el emplazamiento hubiere sido diligenciado, se tendrá a la parte actora por desistida con perjuicio. (Énfasis suplido.)(⁵)*

---

(¹) Véanse: *Global v. Salaam*, 164 D.P.R. 474 (2005); *Datiz v. Hospital Episcopal*, 163 D.P.R. 10 (2004); *Medina v. Medina*, 161 D.P.R. 806 (2004); *Rivera v. Jaume*, 157 D.P.R. 562 (2002); *Álvarez v. Arias*, 156 D.P.R. 352 (2002); *Quiñones Román v. Cía. ABC*, 152 D.P.R. 367, 374 (2000); *First Bank v. Inmob. Nac., Inc.*, 144 D.P.R. 901, 913 (1998); *Márquez v. Barreto*, 143 D.P.R. 137, 142–43 (1997).

(²) Véanse: *Álvarez v. Arias*, supra; *Quiñones Román v. Cía. ABC*, supra; *Márquez v. Barreto*, supra; *Pou v. American Motors Corp.*, 127 D.P.R. 810 (1991).

(³) Véanse: 32 L.P.R.A. Ap. III; *Global v. Salaam*, supra; *Datiz v. Hosp. Episcopal*, supra; *Medina v. Medina*, supra; *Rivera v. Jaume*, supra; *Quiñones Román v. Cía. ABC*, supra; *First Bank v. Inmob. Nac., Inc.*, supra; *Rodríguez v. Nasrallah*, 118 D.P.R. 93, 98 (1986).

(⁴) Véanse: *Global v. Salaam*, supra; *Datiz v. Hosp. Episcopal*, supra; *Álvarez v. Arias*, supra; *First Bank v. Inmob. Nac., Inc.*, supra; *Márquez v. Barreto*, supra; *Rodríguez v. Nasrallah*, supra.

(⁵) Se encuentran subyacentes en la regla en cuestión los propósitos cardinales de acelerar la litigación, promover que las partes ejerzan la debida diligencia y des-

En ocasión de interpretar la disposición antes transcrita, hemos resuelto que el término de seis meses para diligenciar el emplazamiento, el cual es de cumplimiento estricto,[6] comienza a transcurrir a partir de la presentación de la demanda, y no desde la fecha cuando el emplazamiento es expedido, como expresamente establece la referida regla.[7] Ello porque, de ordinario, el Secretario del Tribunal expide inmediatamente los emplazamientos al presentarse la demanda.[8] "Se trata de un trámite ministerial, automático, subsiguiente a la presentación de la demanda, como evento inmediato que da inicio a la acción civil."[9]

Desde *Banco Metropolitano v. Berríos*, 110 D.P.R. 721 (1981), este Tribunal ha reconocido reiteradamente la facultad discrecional que ostenta el foro primario, al amparo de la Regla 68.2 de Procedimiento Civil,[10] para prorrogar por un período razonable el término de seis meses prescrito por la Regla 4.3(b), *supra*, incluso cuando este remedio se solicite después de haber expirado el término reglamentario, *siempre y cuando la parte promovente demuestre justa causa para ello y no haya abuso de discreción por parte del foro primario.*[11] La discreción es el instrumento más poderoso reservado a los jueces para hacer justicia;[12] sin embargo, ésta no puede ejercitarse en el vacío ni de modo arbitrario, sino que invariablemente debe haber una razón

pejar los calendarios judiciales en las etapas tempranas del pleito. Véanse: *Monell v. Mun. de Carolina*, 146 D.P.R. 20, 26 (1998); *Banco Metropolitano v. Berríos*, 110 D.P.R. 721, 724 (1981).

[6] *Global v. Salaam*, supra; *López v. Porrata-Doria*, 140 D.P.R. 96 (1996).

[7] Véanse: *Datiz v. Hosp. Episcopal*, supra; *Monell v. Mun. de Carolina*, supra; R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, San Juan, Ed. Michie, 1997.

[8] Véanse: Regla 4.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III; *Datiz v. Hosp. Episcopal*, supra; *Monell v. Mun. de Carolina*, supra, pág. 24.

[9] *Monell v. Mun. de Carolina*, supra, pág. 24.

[10] 32 L.P.R.A. Ap. III.

[11] Véanse: *Monell v. Mun. de Carolina*, supra; *First Bank v. Inmob. Nac., Inc.*, supra, pág. 914; *López v. Porrata-Doria*, supra, pág. 102; *In re Fernández Torres*, 122 D.P.R. 859 (1988); *Lugo v. Municipio de Bayamón*, 111 D.P.R. 679, 680 (1981); *Banco Metropolitano v. Berríos*, supra.

[12] *Banco Metropolitano v. Berríos*, supra, pág. 725.

bien fundada que mueva la conciencia judicial hacia la concesión de la prórroga solicitada.[13] Así, pues, recae sobre la parte actora la carga de justificar, con referencia a los hechos y las circunstancias meritorias del caso, la razón o el motivo para no haber emplazado dentro del término original prescrito por la Regla 4.3(b), *supra*.[14] Para que un tribunal revisor pueda descargar su función cuando se recurra contra una decisión con respecto a este asunto, la moción de la parte promovente deberá exponer, de modo afirmativo y en forma específica, la razón constitutiva de justa causa para la extensión del término ya vencido, sobre la cual pueda operar la discreción judicial; justificación que necesariamente debe estar atada al sentido de justicia que impregna la reclamación del demandante.[15]

Como vemos, la Regla 4.3(b), *supra*, dispone que sólo se concederá una prórroga para diligenciar un emplazamiento si media "justa causa", y ésta se solicita dentro del plazo reglamentario de seis meses. *Sin embargo, a través de su jurisprudencia, este Tribunal ha "flexibilizado" los requerimientos de dicha regla para brindarle la oportunidad a los demandantes de mediar justa causa para ello y de solicitar una extensión del término reglamentario después de agotado el plazo original, de manera que no proceda la severa sanción de desistimiento de la demanda con perjuicio.* No obstante, para ello siempre será necesario que la parte demandante justifique con especificidad la razón o el motivo para su inacción dentro del plazo original.

A la luz de la normativa procesal antes esbozada, analicemos la actuación del foro intermedio apelativo de dar a la señora Rivera Ocasio por desistida con perjuicio de su demanda en cuanto a los recurridos, Sres. José Luis y Jason Pérez Padilla.

---

[13] *Monell v. Mun. de Carolina*, supra; *Lugo v. Municipio de Bayamón*, supra; *Banco Metropolitano v. Berríos*, supra.

[14] *Monell v. Mun. de Carolina*, supra, pág. 27; *First Bank v. Inmob. Nac., Inc.*, supra; *Lugo v. Municipio de Bayamón*, supra, págs. 680–681.

[15] *First Bank v. Inmob. Nac., Inc.*, supra, pág. 915. Véase, también, *Lugo v. Municipio de Bayamón*, supra.

La parte demandante, aquí peticionaria, sostiene que el entonces Tribunal de Circuito de Apelaciones erró al así proceder. Arguye que un examen de las circunstancias del caso ante nos, a tenor con la jurisprudencia interpretativa de la Regla 4.3(b) de Procedimiento Civil, *supra*, revela que la drástica sanción impuesta por el foro intermedio apelativo era *improcedente*. Plantea, asimismo, que al autorizar el emplazamiento mediante edictos de los aquí recurridos, el foro primario lo que hizo fue ejercitar correctamente la facultad discrecional que le reconoce nuestro ordenamiento para extender el término reglamentario de seis meses provisto por la Regla 4.3(b), *supra*, para el diligenciamiento de los emplazamientos.[16] Por el contrario, los recurridos sostienen que el foro intermedio apelativo actuó correctamente al desestimar con perjuicio la demanda, ya que la parte peticionaria no demostró la razón constitutiva de "justa causa" que le impidió solicitar y diligenciar los emplazamientos mediante edictos en conformidad con la Regla 4.3(b), *supra*.

Según el trasfondo procesal previamente consignado, la señora Rivera Ocasio presentó su demanda sobre división de comunidad de bienes contra los causahabientes del finado José M. Pérez Rivera con fecha de 1ro de diciembre de 2000. Ese mismo día, la Secretaría del Tribunal de Primera Instancia expidió el emplazamiento dirigido a la codemandada Iris Nereida Pérez Padilla, hermana de los recurridos. En aquel entonces, la señora Rivera Ocasio no sometió, para su correspondiente expedición, los proyectos de emplazamiento dirigidos a los restantes componentes de la sucesión, los codemandados José Luis y Jason Pérez Padilla. Ello porque, a pesar de estar al tanto de que éstos vivían en Estados Unidos, alegadamente ignoraba sus respectivas direcciones residenciales. El emplazamiento a la codemandada Pérez Padilla fue diligenciado personalmente el 10 de diciembre del mismo año, esto es, dentro del término de seis meses prescrito por la Regla 4.3(b), *supra*.

---

[16] Véase Petición de *certiorari*, págs. 11–13.

No fue hasta el 3 de julio de 2001, siete meses después de haber presentado su demanda, que la señora Rivera Ocasio acudió al foro primario para solicitar que se prorrogara el término reglamentario para diligenciar los emplazamientos de los recurridos. En apoyo de su solicitud, adujo que todavía desconocía las direcciones residenciales de éstos, a pesar de habérselas requerido a su hermana, la codemandada Iris Nereida Pérez Padilla. De igual forma, anticipó que de no obtener la información requerida, habría de pedir seguidamente autorización al tribunal para diligenciar los emplazamientos de los recurridos *mediante edictos.* El foro primario acogió la solicitud de la parte demandante y concedió una prórroga de treinta días, que habría de contarse desde la fecha cuando la codemandada Pérez Padilla le suministrara las direcciones en cuestión.

Así las cosas, mediante carta de 30 de agosto de 2001, la representación legal de la codemandada Pérez Padilla le proveyó a la demandante las direcciones exactas de los codemandados no residentes en Puerto Rico. *A pesar de lo anterior, no fue hasta el 4 de septiembre de 2002, esto es, casi un año después de expirada la prórroga concedida por el foro primario para el diligenciamiento de los emplazamientos, que la parte demandante presentó ante dicho foro una moción para emplazar por medio de edictos a los Sres. José Luis y Jason Pérez Padilla.* En esta ocasión arguyó que no había actuado dentro del término de la prórroga otorgada, pues entendía que los procedimientos ante el Tribunal de Primera Instancia estaban paralizados; ello porque a la fecha de la concesión de la prórroga, el foro intermedio apelativo aún no había dilucidado la controversia en torno a la falta de jurisdicción sobre los señores Pérez Padilla ni la cuestión sobre la invalidez de la orden de embargo dictada *ex parte* por el foro primario. Posteriormente, reiteró que había estimado "razonable y prudente" aguardar por la sentencia del foro intermedio apelativo

que resolviera estos asuntos para entonces continuar con las gestiones dirigidas a emplazar a los aquí recurridos.([17])

*Transcurridos casi dos años de haberse interpuesto la demanda de marras,* el 9 de octubre de 2002 el Tribunal de Primera Instancia dispuso finalmente que los emplazamientos de los codemandados José Luis y Jason Pérez Padilla se hicieran mediante edictos, los cuales fueron publicados el 23 de octubre de 2002 en el periódico *El Nuevo Día.*

En vista del cuadro procesal antes descrito, no podemos más que coincidir con el criterio del foro intermedio apelativo de que, *evidentemente,* la parte demandante no desplegó la diligencia razonable para diligenciar los emplazamientos de los aquí recurridos dentro del término original dispuesto por la Regla 4.3(b), *supra,* ni en el término de la prórroga dispuesta a esos fines por el Tribunal de Primera Instancia. La señora Rivera Ocasio incumplió con ambos términos, careciendo de "justa causa" para así hacerlo.([18])

Entendemos que la parte demandante tenía disponibles los distintos mecanismos de descubrimiento de prueba expuestos en nuestro ordenamiento procesal civil para obtener *oportunamente* las últimas direcciones conocidas de los aquí recurridos y de ahí proceder a emplazarlos conforme a derecho.([19]) A modo de ejemplo, la señora Rivera Ocasio bien pudo notificarle un interrogatorio a la codemandada Iris Nereida Pérez Padilla para requerirle la información en cuestión.

En el caso ante nos, la peticionaria sostiene que la codemandada Pérez Padilla tardó aproximadamente ocho

---

([17]) Véase Apéndice, págs. 192–194.

([18]) A poco que examinamos el expediente de este caso, se desprende que la parte demandante tenía conocimiento de las direcciones exactas de los recurridos al menos desde el 30 de agosto de 2001. En consecuencia, ésta tuvo casi un año, antes de formular su solicitud de emplazamiento mediante edictos, para intentar emplazar personalmente a los codemandados no residentes en Puerto Rico, mas no lo hizo.

([19]) Véase, a modo ilustrativo, *Núñez González v. Jiménez Miranda,* 122 D.P.R. 134, 143 (1988).

meses en proveerle las direcciones de los recurridos, a pesar de los múltiples requerimientos que se le hicieran a esos efectos, incluyendo los efectuados durante la toma de una deposición.[20] Sin embargo, cabe destacar que nada en el expediente nos convence de que los múltiples requerimientos en efecto se hicieran. Reconocemos que, conforme a la Regla 67.4 de Procedimiento Civil,[21] las partes no tienen la obligación procesal de presentar en el tribunal, entre otros documentos, los interrogatorios que le notifiquen a la parte contraria como parte del descubrimiento de prueba, así como las contestaciones a éstos, hasta tanto sea necesaria su utilización en los procedimientos o su presentación sea ordenada por el tribunal *motu proprio* o a moción de la parte interesada. No obstante, consideramos que, de haber la señora Rivera Ocasio realizado los diversos requerimientos que alega, ésta debió hacerlo constar ante el foro primario mediante la presentación de los escritos o documentos pertinentes, de manera que demostrara las diligencias efectuadas para localizar a los recurridos y emplazarlos oportunamente.

Además, no podemos perder de perspectiva que la codemandada Pérez Padilla de forma alguna venía obligada a cooperar con la demandante peticionaria en el diligenciamiento de los emplazamientos a los restantes miembros de la sucesión.[22]

---

[20] Véase Apéndice, pág. 192.

[21] 32 L.P.R.A. Ap. III.

[22] Dado que el emplazamiento es un imperativo constitucional del debido proceso de ley, hemos resuelto que en forma alguna el demandado está obligado a cooperar con el demandante en la realización por éste del diligenciamiento del emplazamiento. Los demandados tienen el derecho a ser emplazados conforme al derecho; además, existe en nuestro ordenamiento una política pública de que la parte demandada debe ser emplazada debidamente para evitar fraude y que se utilicen procedimientos judiciales para privar a una persona de su propiedad sin el debido proceso de ley. Véanse: *Quiñones Román v. Cía. ABC*, supra, pág. 375; *First Bank v. Inmob. Nac., Inc.*, supra, pág. 916. Esta política pública pone todas las exigencias y los requisitos sobre los hombros del demandante, no sobre los demandados. Véase *First Bank v. Inmob. Nac., Inc.*, supra. *Por lo anterior, le corresponde al demandante realizar a través de los medios provistos por ley, todos los actos necesarios para conferir al tribunal completa jurisdicción sobre la persona del demandado.* Véase *Álvarez v. Arias*, supra.

Ahora bien, aunque nos reafirmamos en que la parte demandante, aquí peticionaria, no actuó con la debida diligencia para emplazar oportunamente a los aquí recurridos y tampoco adujo una razón válida en derecho para ello, *no podemos refrendar el curso de acción tomado por el entonces Tribunal de Circuito de Apelaciones de dar a la parte actora por desistida con perjuicio de su demanda en cuanto a los recurridos, Sres. José Luis y Jason Pérez Padilla. La determinación del foro intermedio apelativo tiene el efecto de una adjudicación en los méritos, con el consabido resultado de que tendrá autoridad de cosa juzgada.*(²³) *Por la naturaleza particular de la situación fáctica ante nos, la aplicación literal por parte del foro intermedio apelativo de la norma adjetiva establecida en la Regla 4.3(b) de Procedimiento Civil,* supra, *conduce al resultado antijurídico de la indivisión indefinida de una comunidad de bienes.* La decisión del tribunal *a quo* revela cómo las normas procesales, en determinadas ocasiones, parecen adquirir vida propia sin que haya razón válida que así lo amerite.

Reiteramos, una vez más, que al interpretar nuestras Reglas de Procedimiento Civil hay que tener presente, como principio rector, que éstas no tienen vida propia; sólo existen para hacer viable la consecución del derecho sustantivo de las partes.(²⁴) En ocasiones, en nuestro afán de hacer valer las reglas, las aplicamos literalmente; sin embargo, debemos evitar convertirnos en prisioneros de la tiesa construcción de una norma procesal. Cuando una regla procesal no pueda armonizarse en su aplicación con el derecho sustantivo de una parte, la primera forzosamente tiene que ceder, pues no puede dar base a que el derecho

---

(²³) Véase Hernández Colón, *op. cit.*, Sec. 2007.

(²⁴) Véanse: *Pérez v. Com. Rel. Trab. Serv. Púb.*, 158 D.P.R. 180 (2002); *Soc. de Gananciales v. García Robles*, 142 D.P.R. 241, 258 (1997); *Núñez González v. Jiménez Miranda,* supra, pág. 144; *Dávila v. Hosp. San Miguel, Inc.*, 117 D.P.R. 807, 816 (1986).

sustantivo, que está llamada a hacer viable, sucumba ante ésta.[25]

Las alegaciones contenidas en la demanda presentada por la señora Rivera Ocasio pretenden, mediante la acción *communi dividundo*, que se ordene a los codemandados, miembros de la sucesión de José M. Pérez Rivera, a proceder con la división de la comunidad de bienes resultante de la herencia y que se le entregue a la demandante un cincuenta por ciento de las ganancias producto de su esfuerzo y trabajo durante la relación concubinaria pública que mantuviera con el causante por espacio de diecisiete años.[26]

El Art. 326 del Código Civil de Puerto Rico establece, en lo pertinente, que *"[h]ay comunidad cuando la propiedad de una cosa o de un derecho pertenece pro indiviso a varias personas"*. (Énfasis suplido.)[27] Nuestro Código Civil ordena que las reglas concernientes a la división de la comunidad hereditaria, siempre que no haya conflicto o incompatibilidad, aplicarán a la división entre los partícipes de la comunidad, ya que poseen características comunes que las enlazan en similaridad.[28]

De otra parte, en cuanto a la división de la cosa común

---

[25] Véanse: *M & R Developers, S.E. v. Bco. Gub. Fom.*, 153 D.P.R. 596 (2001); *Moa v. E.L.A.*, 100 D.P.R. 573, 586 (1972). Véase, además, el Art. V, Sec. 6 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, ed. 1999, pág. 395, el cual dispone, en lo pertinente: "El Tribunal Supremo adoptará para los tribunales, reglas de evidencia y de procedimiento civil y criminal que *no menoscaben*, amplíen o modifiquen derechos sustantivos de las partes." (Énfasis suplido.)

[26] El interés propietario de los concubinos con respecto a los bienes adquiridos o que hayan incrementado de valor vigente la relación, ha sido reconocido en nuestro ordenamiento. Dicho interés propietario puede surgir como pacto expreso; como pacto implícito que se desprende espontáneamente de la relación humana y económica existente entre las partes durante el concubinato, y como un acto justiciero para evitar el enriquecimiento injusto. Véanse: *Cruz Ayala v. Rivera Pérez*, 141 D.P.R. 44, 52 (1996), y casos allí citados; E. Vázquez Bote, *Derecho Civil de Puerto Rico*, San Juan, Eds. Jurídicas, 1974, T. II, págs. 283–284.

[27] 31 L.P.R.A. sec. 1271. Véase *Ortiz Roberts v. Ortiz Roberts*, 103 D.P.R. 628, 631 (1975).

[28] Véanse: Art. 340 del Código Civil, 31 L.P.R.A. sec. 1285; *Díaz v. Registrador*, 107 D.P.R. 233, 236 (1978); *Cruz v. Sucn. Landrau Díaz*, 97 D.P.R. 578, 588 (1969); *Shivell v. Barber y Boscio*, 92 D.P.R. 400, 410 (1965).

se refiere, el Art. 334 del Código Civil preceptúa lo siguiente:

> *Ningún copropietario está obligado a permanecer en la comunidad. Cada uno de ellos podrá pedir en cualquier tiempo que se divida la cosa común.* Esto no obstante, será válido el pacto de conservar la cosa indivisa por tiempo determinado, que no exceda de diez años. Este plazo podrá prorrogarse por nueva convención. (Énfasis suplido.)[29]

La acción para pedir la división de la propiedad común es *imprescriptible.* Así lo dispone el Art. 1865 de nuestro Código Civil.[30] Citando con aprobación los comentarios de Manresa y Scaevola, este Tribunal ha reconocido que nuestro Código Civil desalienta y repudia la comunidad, fuente de desavenencias que dificultan su administración y degenera en obstáculo al fomento de la propiedad, la industria y la riqueza. Hacia el objetivo de extinguir la copropiedad se dirige, entre otros, el antedicho Art. 334, al declarar que *ningún copropietario estará obligado a permanecer ad perpétuam en indivisión forzosa, expresión ésta que concreta la imprescriptibilidad de las acciones para solicitar la división de la propiedad común.*[31] Véase *Ortiz Roberts v. Ortiz Roberts,* supra.

---

[29] 31 L.P.R.A. sec. 1279.

[30] 31 L.P.R.A. sec. 5295. El citado artículo dispone: "No prescribe entre coherederos, condueños o propietarios de fincas colindantes la acción para pedir la partición de la herencia, la división de la cosa común o el deslinde de las propiedades contiguas." Véase, además, *Ortiz Roberts v. Ortiz Roberts,* supra, pág. 630.

[31] Sobre este particular, señala Vázquez Bote lo siguiente:

"Es fórmula ampliamente repetida, que las situaciones de conjunción o concurso subjetivo sobre un determinado objeto resultan antieconómicas, ya que suelen provocar dificultades de administración y, desde luego, un desmerecimiento en el valor en cambio. En un plano jurídico, suele expresarse que, no obstante la posible perfección que pueda alcanzarse en la regulación —prevención— de tales situaciones, el conflicto no es inevitable; por el contrario, se producen abundantes ocasiones de desavenencias, fuente de correspondientes perturbaciones y de litigios. *De ahí que los Ordenamientos tiendan siempre a facilitar la desaparición de las situaciones de comunidad, reconociendo amplias oportunidades de provocar la división de la cosa tenida en común. Cada copropietario, pues, puede pedir 'en cualquier tiempo que se divida la cosa común' (art. 334, párrafo primero, C.c.), no estando ningún copropietario obligado a permanecer en la comunidad (art. 334, párrafo primero, proposición primera, C.c.).*

Por último, es requisito esencial para el ejercicio de la acción *communi dividundo* que ésta se dirija contra todos los partícipes o comuneros con el fin de que no resulte ineficaz la sentencia que se dicte para hacer efectiva la división de la cosa poseída *pro indiviso* y en común.[32] *Por ende, para que pueda prosperar la acción ejercitada por la señora Rivera Ocasio, es necesario que ésta haya traído a la jurisdicción del tribunal a todos los partícipes de la comunidad, quienes son partes indispensables en el pleito sin cuya presencia no puede adjudicarse la controversia.*[33]

En el caso que hoy nos atañe, enfrentamos la dificultosa tarea de armonizar dos disposiciones, una de carácter puramente procesal y otra sustantiva, que claramente no son conciliables entre sí. De una parte, tenemos el mandato expreso de la Regla 4.3(b) de Procedimiento Civil, *supra*, de dar a la peticionaria por desistida con perjuicio de su reclamación contra los recurridos, por ésta haber diligenciado sus emplazamientos *inoportunamente* sin que mediara "justa causa" para ello. De otra, tenemos el derecho sustantivo absoluto que le asiste a la peticionaria, consagrado en el Art. 334 del Código Civil, *supra*, a no permane-

---

"No establece la ley ningún requisito especial para provocar la división de la cosa común. El hecho de una situación de indivisión autoriza desde luego a pretender la división misma, incluso aunque con ello se origine un desmerecimiento de la cosa, pues, como tiene declarado la jurisprudencia, 'el derecho del comunero a no permanecer en la comunidad no está supeditado a que la división no haga desmerecer el valor de la cosa poseída en común; sólo en el caso de que ésta se destruya es que puede coartarse y anularse aquel derecho'. ...

"A este espíritu responde el [A]rt. 1.865, C.c., al declarar que no prescribe la acción para dividir la cosa común: 'no prescribe entre coherederos, condueños o propietarios de fincas colindantes la acción para pedir la partición de la herencia, la división de la cosa común o el deslinde de las propiedades contiguas'." (Énfasis suplido.) E. Vázquez Bote, *Tratado teórico, práctico y crítico de derecho privado puertorriqueño: derechos reales*, New Hampshire, Butterworth Pubs., 1993, T. VIII, Vol. II, págs. 19–20.

[32] Véanse: *Cabassa v. Registrador*, 116 D.P.R. 861, 866 (1986); *Passalacqua v. Passalacqua*, 87 D.P.R. 587, 595–596 (1963).

[33] Véase *Sucesión Collazo et al. v. Borrás et al.*, 26 D.P.R. 482 (1918). Una parte indispensable es aquella persona cuyos derechos e intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada estando dicha persona ausente del litigio. Véanse: Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III; *Fred y otros v. E.L.A.*, 150 D.P.R. 599 (2000); *Cepeda Torres v. García Ortiz*, 132 D.P.R. 698 (1993).

cer *ad perpetuam* en una comunidad forzosa con los code-mandados; derecho que, dicho sea de paso, es *imprescriptible*.

*Creemos que, en situaciones tan particulares como la de autos, merecedoras de un enfoque especial, la norma procesal que emana de la Regla 4.3(b)*, supra, *no puede tener el efecto de imposibilitar que un comunero ejercite su derecho sustantivo absoluto a solicitar la división de la comunidad de bienes en cualquier momento.* Inclinarnos por una aplicación literal de las disposiciones de la Regla 4.3(b), *supra*, al caso que nos ocupa, conduciría, en la práctica, a la derrota de un derecho esencial concebido por el Art. 334 del Código Civil, *supra*. Este curso de acción, con toda certeza, le haría un flaco servicio a nuestro deber primordial de hacer justicia.

En vista de que en cualquier tiempo, pues, se puede ejercitar la potestad disolutoria de la comunidad de bienes, sin que obste a ello cualquier circunstancia intercedente, es imperativo que, como acto justiciero, rechacemos una aplicación de la Regla 4.3(b) con excesivo rigor literal y, en su lugar, garanticemos el derecho sustantivo de la peticionaria a la *actio communi dividundo*.

De prevalecer la decisión del foro intermedio apelativo de desestimar con perjuicio la demanda de la señora Rivera Ocasio en cuanto a los aquí recurridos, dictamen que tendría efecto de cosa juzgada, ello impediría que la comunidad de bienes existente entre la señora Rivera Ocasio y los codemandados, como consecuencia de la muerte del causante, sea dividida. Es decir, la actuación del foro intermedio apelativo conduciría al inaceptable resultado de que la parte aquí peticionaria tuviera que permanecer *ad perpetuam* en indivisión forzosa con los codemandados.

Analizada la situación fáctica procesal del caso ante nos, a la luz de los principios normativos que preceden, concluimos que el curso de acción más justo y apropiado era, precisamente, el adoptado por el foro primario: permitir el diligenciamiento, aunque tardío, de los emplazamientos a los recurridos de forma tal que la parte demandante

pudiera ejercer plenamente la *actio communi dividundo* contra todos los partícipes de la comunidad. Por consiguiente, erró el entonces Tribunal de Circuito de Apelaciones al desestimar con perjuicio la demanda de la peticionaria, en cuanto a los aquí recurridos.