EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Providencia Rivera Ocasio<br><br>Demandante-Peticionaria<br><br>v.<br><br>Sucesión de José M. Pérez Rivera, compuesta por José Luis Pérez Padilla, Iris Nereida Pérez Padilla y Jasón Pérez Padilla<br><br>Demandados-Recurridos | Certiorari<br><br>2005 TSPR 97<br><br>164 DPR \_\_\_\_ |

Número del Caso: CC-2003-608

Fecha: 30 de junio de 2005

Tribunal de Apelaciones:

        Circuito Regional de Bayamón-Panel II

Juez Ponente:

        Hon. Guillermo Arbona Lago

Abogado de la Parte Peticionaria:

        Lcdo. Harry Anduze Montaño
        Lcdo. Héctor A. Sostre Narváez
        Lcdo. Rafael A. García López

Abogada de la Parte Recurrida:

        Lcda. Marisel Peña Senati

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Providencia Rivera Ocasio

    Demandante-Peticionaria

         v.

                              CC-2003-608

Sucesión de José M. Pérez Rivera, compuesta por José Luis Pérez Padilla, Iris Nereida Pérez Padilla y Jason Pérez Padilla

    Demandados-Recurridos

SENTENCIA

San Juan, Puerto Rico, a 30 de junio de 2005.

Mediante el recurso de *certiorari* ante nos, la peticionaria solicita que revisemos una sentencia emitida por el entonces Tribunal de Circuito de Apelaciones con fecha de 29 de mayo de 2003. En virtud del dictamen recurrido, el foro intermedio apelativo revocó una orden dictada por el Tribunal de Primera Instancia que, entre otras cosas, había declarado sin lugar una moción de desestimación por falta de jurisdicción *in personam* presentada por los aquí recurridos, señores José Luis y Jason Pérez Padilla. El tribunal intermedio apelativo dio a la peticionaria por desistida **con perjuicio** de su

reclamación contra los recurridos por ésta haber incumplido con lo dispuesto por la Regla 4.3(b) de Procedimiento Civil[1]. No atendió el asunto que le fue planteado por la parte demandada de autos, relativo a la nulidad del emplazamiento por edictos y a la falta de jurisdicción del Tribunal de Primera Instancia sobre su persona.

I

El 1 de diciembre de 2000, la señora Providencia Rivera Ocasio (en adelante "señora Rivera Ocasio") instó ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, una demanda sobre división de comunidad de bienes contra la Sucesión de José M. Pérez Rivera, compuesta por sus hijos José Luis, Jason e Iris Nereida, todos de apellidos Pérez Padilla. En breve síntesis, alegó haber mantenido por espacio de diecisiete (17) años una relación concubinaria pública, a manera de matrimonio, con el causante de los codemandados, durante la que contribuyó con su esfuerzo y trabajo a la creación de una comunidad de intereses económicos entre ambos. En razón de ello, solicitó que se le declarara acreedora en un cincuenta por ciento (50%) de las ganancias acumuladas durante el concubinato, estimadas en trescientos mil dólares ($300,000), y que se le entregara dicha participación. Ese

---

[1] 32 L.P.R.A. Ap. III, R. 4.3(b)

mismo día la Secretaría del Tribunal de Primera Instancia expidió el emplazamiento dirigido a la codemandada Iris Nereida Pérez Padilla.[2] La parte demandante no sometió en aquel entonces, para su expedición, los proyectos de emplazamiento dirigidos a los restantes miembros de la sucesión, los codemandados José Luis y Jason Pérez Padilla. Ello porque, a pesar de estar al tanto de que éstos vivían en Estados Unidos, alegadamente desconocía sus respectivas direcciones residenciales.

Junto a la demanda, y en aseguramiento de la sentencia que pudiera recaer a su favor, la señora Rivera Ocasio acompañó una solicitud de embargo sobre determinados "bienes comunes" depositados en el Banco Santander, sucursal de Bayamón Center. El 13 de diciembre de 2000, el foro primario acogió la petición de la demandante, dictando una orden de embargo sin la celebración de vista previa.[3]

---

[2] El referido emplazamiento fue diligenciado personalmente el 10 de diciembre de 2000.

[3] Insatisfecha con el embargo trabado, la codemandada Pérez Padilla presentó oportunamente una moción de reconsideración, la cual fue discutida durante una vista celebrada el 8 de junio de 2001. En igual fecha, el Tribunal de Primera Instancia expidió una orden en la que redujo el monto del embargo a la mitad, liberando así la otra mitad de los fondos a favor de los hijos del causante.

Aún inconforme, el 18 de julio de 2001, la codemandada acudió ante el entonces Tribunal de Circuito de Apelaciones vía recurso de *certiorari*. Mediante sentencia emitida el 31 de julio de 2002, el foro intermedio apelativo revocó la orden allí recurrida y levantó el embargo sobre los bienes en cuestión. Al así resolver, sostuvo lo siguiente: "[l]o dispuesto en esta sentencia no es óbice para que el tribunal *a quo*, de así solicitarlo la parte interesada, señale una vista para entender en una solicitud de embargo preventivo

Con fecha de 2 de enero de 2001, la codemandada Iris Nereida Pérez Padilla presentó su contestación a la demanda de autos, negando las alegaciones principales de la misma. A la par, reconvino contra la parte demandante.[4] Tras varios trámites procesales, el 28 de junio de 2001, la codemandada Pérez Padilla compareció ante el Tribunal de Primera Instancia solicitando la desestimación de la demanda por falta de parte indispensable.[5] Adujo, *inter alia*, que la parte demandante ni siquiera había solicitado la expedición de los emplazamientos a los restantes componentes de la sucesión, quienes son "partes indispensables en el pleito." Sostuvo, asimismo, que no había "justa causa" para la demora incurrida por la parte actora en solicitar y diligenciar los referidos emplazamientos.

Transcurridos más de siete (7) meses desde la interposición de la demanda, el 3 de julio de 2001, la parte demandante respondió con una solicitud al foro

---

siempre y cuando se cumpla con el procedimiento establecido en la[s] Regla[s] 56.1, 56.2 y 56.3 de Procedimiento Civil, *supra*. **Previo a ello, las partes interesadas deberán haber sido emplazadas conforme a derecho."** (Énfasis suplido).

Contra dicha sentencia la parte demandante interpuso ante nos una petición de *certiorari*, acompañada de una moción en auxilio de nuestra jurisdicción. Ambas fueron declaradas sin lugar mediante resolución de 6 de septiembre de 2002, notificada a las partes el 10 de septiembre del mismo año. <u>Véase</u> Apéndice de la petición de *certiorari* ante nos (en lo sucesivo "Apéndice"), págs. 106-09; 112-15; 119-21; 128-29; 136-38; 143-46; 165-173.

[4] La señora Rivera Ocasio contestó la reconvención en su contra el 23 de mayo de 2001.

[5] Íd., págs. 150-53.

primario para que extendiera el término reglamentario de seis (6) meses provisto por la Regla 4.3(b) de Procedimiento Civil, *supra*, para diligenciar los emplazamientos a los codemandados José Luis y Jason Pérez Padilla.[6] Arguyó que aún desconocía las direcciones residenciales de éstos, a pesar de requerir tal información de su hermana, la codemandada Iris Nereida Pérez Padilla. De paso, anticipó que, de no obtener la información en cuestión, habría de solicitar autorización al tribunal para realizar los referidos emplazamientos mediante edictos. Por último, procuró una prórroga para replicar a la moción de desestimación por falta de parte indispensable. El 23 de agosto de 2001, el Tribunal de Primera Instancia concedió ambas prórrogas a la parte demandante.[7] Con respecto a la solicitud de desestimación presentada por la codemandada Pérez Padilla, dicho foro le otorgó un término de veinte (20) días a la demandante para que respondiera a la misma.

Así las cosas, mediante comunicación escrita fechada 30 de agosto de 2001, la representación legal de la codemandada Pérez Padilla le proveyó finalmente a la demandante las direcciones exactas de los coherederos

---

[6] En específico, solicitó un plazo adicional de treinta (30) días a ser contados desde la fecha en que la codemandada Pérez Padilla le notificara finalmente las direcciones residenciales de sus hermanos.

[7] Véase Órdenes de 23 de agosto de 2001, archivadas en autos el 30 de agosto del mismo año; Apéndice, págs. 176-77.

demandados, no residentes en Puerto Rico.[8] A pesar de ello,
no fue sino hasta el 4 de septiembre de 2002, esto es, casi
un año después de expirada la prórroga concedida para
diligenciar los emplazamientos en cuestión, que la parte
demandante presentó ante el foro primario una moción para
emplazar mediante la publicación de edictos a los señores
José Luis y Jason Pérez Padilla.[9] En apoyo de su solicitud,
argumentó que no había actuado dentro del término de la
prórroga concedida pues entendía que los procedimientos
ante el foro primario estaban paralizados; ello porque a la
fecha de la concesión de la prórroga, el entonces Tribunal
de Circuito de Apelaciones aún no había resuelto la
controversia relativa a la falta de jurisdicción sobre los
señores Pérez Padilla, ni el asunto sobre la validez de la
orden de embargo dictada *ex parte*.[10] El 16 de septiembre de
2002, la codemandada Iris Nereida Pérez Padilla replicó a
la solicitud de la parte demandante, reafirmándose en su
planteamiento de que la demanda debía desestimarse por
falta de parte indispensable. Sobre este particular, señaló
que habían decursado casi dos (2) años y nueve (9) meses
desde la presentación de la demanda sin que la parte

---

[8] Íd., pág. 174.

[9] Íd., págs. 178-80.

[10] La parte demandante, aquí peticionaria, se refiere al recurso de *certiorari* que presentara la codemandada Pérez Padilla ante el foro intermedio apelativo solicitando la revocación de la orden del Tribunal de Primera Instancia que mantuvo, aunque en una menor cuantía, el embargo trabado. Véase nota al calce núm. 3.

demandante trajera ante la jurisdicción del tribunal a partes indispensables en el pleito. Sostuvo, además, que la señora Rivera Ocasio no había demostrado "justa causa" para no solicitar desde un principio la expedición de los emplazamientos a los otros codemandados, ni para procurar una prórroga para su diligenciamiento después de vencido el término reglamentario de seis (6) meses. El 19 de septiembre de 2002, la parte demandante se opuso a la réplica de la codemandada Pérez Padilla. Reiteró que había considerado "razonable y prudente" esperar por la sentencia del foro intermedio apelativo para entonces continuar con las gestiones encaminadas a emplazar a los restantes codemandados, no residentes en Puerto Rico.[11]

Examinados los escritos de las partes, el 9 de octubre de 2002, el Tribunal de Primera Instancia ordenó[12] la expedición de los emplazamientos por edictos dirigidos a los codemandados José Luis y Jason Pérez Padilla, los que fueron publicados finalmente el 23 de octubre de 2002 en el periódico El Nuevo Día. Una copia de la demanda de autos, del emplazamiento por edicto, de la orden que autorizó los mismos y del edicto publicado le fueron notificadas

---

[11] Apéndice, págs. 192-94.

[12] Véase Orden de 9 de octubre de 2002, notificada a las partes el 16 de octubre siguiente; íd., págs. 202-03. La codemandada Iris Nereida Pérez Padilla presentó oportunamente una moción de reconsideración, pero el foro primario la declaró sin lugar.

oportunamente a los señores Pérez Padilla a sus últimas direcciones conocidas.

Luego de varios incidentes procesales, el 21 de noviembre de 2002, los codemandados José Luis y Jason Pérez Padilla comparecieron por primera vez ante el Tribunal de Primera Instancia, y sin someterse a su jurisdicción, solicitaron la desestimación de la demanda entablada en su contra por falta de jurisdicción *in personam*.[13] Arguyeron, *inter alia*, que la solicitud para emplazarles mediante edictos fue presentada fuera del término reglamentario de seis (6) meses prescrito por la Regla 4.3(b) de Procedimiento Civil[14], *supra*, y, como si fuera poco, luego de expirar la prórroga otorgada inicialmente por el foro primario para diligenciar sus emplazamientos. De igual forma, plantearon: que los fundamentos aducidos por la demandante para solicitar la ampliación del plazo para el diligenciamiento de los emplazamientos, "a todas luces" no satisfacían las exigencias impuestas por la Regla 4.3(b), *supra*, y su casuística interpretativa; que la demandante había condicionado el emplazamiento de los allí comparecientes a la ayuda de la codemandada Pérez Padilla, a pesar de que un demandado no viene en forma alguna a

---

[13] Íd., págs. 12-20.

[14] Respecto a este extremo, señalaron que la demandante solicitó los referidos emplazamientos casi dos (2) años después de radicada la demanda, y tras un año y cuatro (4) meses de haber expirado el término reglamentario para emplazarles.

cooperar con el demandante a esos fines; y, finalmente, **que el incumplimiento con los requisitos estatutarios, tanto en la solicitud de emplazamiento por edictos como en la orden del foro primario autorizándolos, acarreaba la nulidad del edicto publicado y privaba al Tribunal de Primera Instancia de jurisdicción sobre sus personas**. Sobre este último asunto, cuestionaron el que la parte demandante no hubiera presentado, conjuntamente con su solicitud de emplazamientos por edictos, una declaración jurada acreditativa de las diligencias efectuadas para emplazarles, ni hubiera jurado su demanda.[15] El 10 de diciembre de 2002, la parte demandante se opuso a la referida solicitud de desestimación y, el 16 de diciembre siguiente, los señores Pérez Padilla replicaron al escrito en oposición.

Estando pendiente ante el foro primario la solicitud de desestimación, el 20 de diciembre de 2002, la parte demandante solicitó al referido foro que le anotara la rebeldía a los codemandados José Luis y Jason Pérez Padilla. Alegó que éstos no le habían notificado su contestación a la demanda dentro del plazo de treinta (30) días de haberse publicado el edicto. Los señores Pérez Padilla se opusieron.

Analizadas las posiciones de ambas partes, el Tribunal de Primera Instancia declaró sin lugar la moción de

---

[15] Apéndice, pág. 240.

desestimación presentada por los señores Pérez Padilla y, simultáneamente, les anotó la rebeldía. Así lo dispuso en su Orden fechada 17 de enero de 2003.[16]

Insatisfechos con las determinaciones del foro primario, el 20 de febrero de 2003, los señores Pérez Padilla acudieron ante el entonces Tribunal de Circuito de Apelaciones mediante petición de *certiorari*.[17] El 29 de mayo de 2003, el foro intermedio apelativo expidió el auto

---

[16] El archivo en autos de copia de su notificación a las partes se efectuó el 22 de enero de 2003; íd., pág. 40.

[17] Señalaron, entre otras cosas, que el Tribunal de Primera Instancia había incidido al: (i) "no desestimar la causa de acción en contra de los peticionarios, por falta de jurisdicción *in personam*"; (ii) "permitir el emplazamiento por edictos de los peticionarios, a casi dos años de presentada la Demanda y a más de un año y seis meses de haber expirado el término legal para emplazar, cuando de los autos surgía que desde un principio la demandante conocía que los peticionarios residían fuera de Puerto Rico y nunca controvirtieron esa realidad fáctica"; (iii) "permitir el emplazamiento por edicto de los peticionarios fuera del término legal, cuando de la prueba de la demandante surgía que más de un año antes de solicitar emplazar por edictos, tenía conocimiento de la dirección exacta de los demandados"; (iv) "permitir el emplazamiento por edicto, en ausencia de la presentación de una declaración jurada con la solicitud y en ausencia de una Demanda Juramentada"; (v) "permitir el emplazamiento por edicto, mediante una Orden que expresa haber examinado documentos que acompañaron la solicitud de dichos emplazamientos, cuando de los autos surgía que la solicitud se acompaño del proyecto de orden que firmó el juez y de los proyectos de emplazamientos por edictos, lo que resultaba insuficiente en Derecho para autorizar los emplazamientos…"; y (vi) "permitir la publicación de un edicto que, de su faz, no cumplía con los preceptos de la Regla 4.5 de Procedimiento Civil". Véase Apéndice II de la petición de *certiorari* ante nos, págs. 21-22.

solicitado y dictó sentencia revocatoria[18] de las órdenes recurridas. Al así proceder, resolvió que los allí peticionarios habían sido emplazados tardíamente y que la razón aducida por la parte demandante para extender el término de seis (6) meses prescrito por la Regla 4.3(b), *supra*, **ya expirado al momento de solicitar la prórroga**, "resultaba insuficiente" en vista de que un demandado no viene obligado a cooperar con el demandante en el diligenciamiento del emplazamiento. Ante la "ausencia de justa causa", concluyó que el foro primario no debió ampliar el plazo para diligenciar los emplazamientos de los señores Pérez Padilla.

En esa misma línea, el foro intermedio apelativo sostuvo lo siguiente:

> Surge de autos que inmediatamente luego de haber sido concedida la prórroga, específicamente desde el 30 de agosto de 2001, la recurrida ya conocía las direcciones de los codemandados peticionarios. Aun así dejó transcurrir la prórroga ya que no fue hasta el 23 de octubre de 2002 que tramitó mediante edictos la demanda a los peticionarios. En esta ocasión la recurrida no adujo razón válida que justificara la tardanza de más de un año para entonces proceder a emplazar.[19]

En definitiva, el tribunal intermedio apelativo concluyó que la demandante no había desplegado diligencia razonable para emplazar a los restantes miembros de la sucesión Pérez Padilla **"dentro de ninguno"** de los plazos

---

[18] El archivo en autos de copia de su notificación a las partes se efectuó el 6 de junio de 2003; véase Apéndice, pág. 45.

[19] Íd.

concedidos. En consecuencia, **dio por desistida con perjuicio a la demandante de su reclamación en cuanto a los allí peticionarios**. Toda vez que consideró que dicha determinación disponía de por sí de la controversia medular, el Tribunal de Circuito de Apelaciones no atendió ni discutió los restantes errores señalados, incluyendo el relativo a la alegada nulidad del emplazamiento por edictos. Oportunamente la demandante de autos solicitó reconsideración, sin éxito.[20]

En desacuerdo con la sentencia del foro intermedio apelativo, el 30 de julio de 2003, la demandante de autos acudió oportunamente ante nos mediante el presente recurso de *certiorari* [21]. Formuló los señalamientos de error siguientes:

### ERROR I

**Erró, por ser contrario a derecho, el Tribunal de Circuito de Apelaciones al decretar un no ha lugar el 23 de junio de 2003, notificada el 30 de junio de 2003, a una moción de reconsideración a una sentencia del 29 de mayo de 2003, notificada el 6 de junio de 2003, en la que revoca unas órdenes del Tribunal de Primera Instancia y en consecuencia decreta a la demandante-peticionaria por desistida con perjuicio de su acción contra los peticionarios José Luis y Jason Pérez Bonilla (sic), conforme lo dispuesto en la Regla 4.3(b) de Procedimiento Civil.**

---

[20] Véase Orden de 23 de junio de 2003, archivada en autos el 30 de junio del mismo año; Íd., págs. 66-67.

[21] La parte demandada de autos no acudió ante nos con relación a la falta de atención por el Tribunal de Circuito de Apelaciones de su planteamiento sobre nulidad del emplazamiento por edictos.

**ERROR II**

**Erró el Honorable Tribunal de Primera Instancia al decretar una sentencia contraria a la equidad y la justicia y revocando la facultad discrecional del Tribunal de Primera Instancia para prorrogar el diligenciamiento del emplazamiento bajo las circunstancias de este caso.[22]**

Mediante resolución de 10 de octubre de 2003, expedimos el auto solicitado. Ambas partes han comparecido mediante sus respectivos alegatos y, con el beneficio de sus argumentos, resolvemos el asunto traído ante nuestra consideración.

II

Se revoca la sentencia recurrida dictada por el tribunal intermedio apelativo en cuanto dio por desistida con perjuicio la demanda de autos, a tenor con la Regla 4.3(b) de Procedimiento Civil de Puerto Rico, *supra*. Se ordena, la devolución del caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez emitió Opinión de Conformidad.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

---

[22] Véase Petición de *certiorari* ante nos, págs. 5-6.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Providencia Rivera Ocasio

    Demandante-Peticionaria

        v.

Sucesión de José M. Pérez
Rivera, compuesta por José
Luis Pérez Padilla, Iris
Nereida Pérez Padilla y Jason
Pérez Padilla

    Demandados-Recurridos

        CC-2003-608

OPINIÓN DE CONFORMIDAD EMITIDA POR EL JUEZ ASOCIADO SEÑOR RIVERA PEREZ.

San Juan, Puerto Rico, a 30 de junio de 2005.

El emplazamiento es el mecanismo procesal mediante el cual se le notifica adecuada y formalmente al demandado, en virtud de las garantías mínimas del debido proceso de ley, que se ha instado una acción judicial en su contra. De esta forma, el foro primario adquiere efectivamente jurisdicción sobre la persona del demandado, quien entonces quedará obligado por el dictamen que se emita eventualmente. Es a través del emplazamiento que se garantiza de forma óptima el derecho que le asiste a todo demandado a comparecer a juicio, ser oído y presentar prueba

a su favor, de así estimarlo conveniente y previo a que se adjudiquen sus derechos. [23] En múltiples ocasiones este Tribunal ha resuelto que para que el emplazamiento sea efectivo en su propósito, deberá tener una probabilidad razonable de informar y notificar al demandado sobre la acción instada en su contra, de manera tal que éste pueda hacer una decisión informada sobre si desea o no comparecer para defenderse.[24]

**Dado que el emplazamiento constituye un elemento fundamental del derecho constitucional a un debido proceso de ley, sus requisitos, estatuidos en la Regla 4 de Procedimiento Civil, <u>deben cumplirse estrictamente</u>.** [25] **<u>Su inobservancia priva al tribunal de jurisdicción sobre la persona del demandado para considerar y resolver la controversia planteada ante sí</u>.**[26]

---

[23] <u>Véase</u> <u>Global Gas, Inc. v. Salaam Realty</u>, res. el 6 de abril de 2005, 2005 T.S.P.R. 42; <u>Datiz Vélez v. Hosp. Episcopal San Lucas</u>, 2004 T.S.P.R. 152; <u>Medina Garay v. Medina Garay</u>, 2004 T.S.P.R. 75; <u>Rivera Báez v. Jaume Andújar</u>, 2002 T.S.P.R. 100; <u>Álvarez Elvira v. Arias Ferrer</u>, 2002 T.S.P.R. 31; <u>Quiñones Román v. Compañía ABC</u>, 152 D.P.R. 367, 374 (2000); <u>First Bank of P.R. v. Inmobiliaria Nacional</u>, 144 D.P.R. 901, 913 (1998); <u>Márquez Resto v. Barreto Lima</u>, 143 D.P.R. 137, 142-43 (1997).

[24] <u>Véase</u> <u>Álvarez Elvira v. Arias Ferrer</u>, *supra*; <u>Quiñones Román v. Compañía ABC</u>, *supra*; <u>Márquez Resto v. Barreto Lima</u>, *supra*; <u>Pou v. American Motors Corp.</u>, 127 D.P.R. 810 (1991).

[25] <u>Véase</u> 32 L.P.R.A. Ap. III, R. 4; <u>Global Gas, Inc. v. Salaam Realty</u>, *supra*; <u>Datiz Vélez v. Hosp. Episcopal San Lucas</u>, *supra*; <u>Medina Garay v. Medina Garay</u>, *supra*; <u>Rivera Báez v. Jaume Andújar</u>, *supra*; <u>Quiñones Román v. Compañía ABC</u>, *supra*; <u>First Bank of P.R. v. Inmobiliaria Nacional</u>, *supra*; <u>Rodríguez v. Nasrallah</u>, 118 D.P.R. 93, 98 (1986).

[26] <u>Véase</u> <u>Global Gas, Inc.</u>, *supra*; <u>Datiz Vélez</u>, *supra*; <u>Álvarez Elvira</u>, *supra*; <u>First Bank of P.R. v. Inmobiliaria Nacional</u>,

Por resultar de particular relevancia al caso que nos ocupa, examinemos lo dispuesto por la Regla 4.3(b) de Procedimiento Civil, *supra*. La antedicha disposición reglamentaria lee como sigue:

> **[e]l emplazamiento será diligenciado en el término de seis (6) meses de haber sido expedido. Dicho término sólo podrá ser prorrogado por un término razonable a discreción del tribunal si el demandante demuestra justa causa para la concesión de la prórroga y solicita la misma dentro del término original. Transcurrido el término original o su prórroga sin que el emplazamiento hubiere sido diligenciado, se tendrá a la parte actora por desistida con perjuicio.** (Énfasis suplido).[27]

En ocasión de interpretar la disposición antes transcrita, hemos resuelto que el término de seis (6) meses para diligenciar el emplazamiento, el cual es de cumplimiento estricto[28], comienza a transcurrir a partir de la presentación de la demanda, y no desde la fecha en que el emplazamiento es expedido como expresamente establece la referida regla.[29] Ello porque, de ordinario, los emplazamientos se expiden inmediatamente por el Secretario

---

*supra*; <u>Márquez v. Barreto</u>, *supra*; <u>Rodríguez v. Nasrallah</u>, *supra.*

[27] Subyacentes a la regla en cuestión se encuentran los propósitos cardinales de acelerar la litigación, promover que las partes ejerzan la debida diligencia y despejar los calendarios judiciales en las etapas tempranas del pleito. <u>Véase</u> <u>Monell Cardona v. Aponte</u>, 146 D.P.R. 20, 26 (1998); <u>Banco Metropolitano v. Berríos Marcano</u>, 110 D.P.R. 721, 724 (1981).

[28] <u>Global Gas, Inc.</u>, *supra*; <u>López v. Porrata-Doria</u>, *supra*.

[29] <u>Véase Datiz Vélez</u>, *supra*; <u>Monell Cardona v. Aponte</u>, *supra*; R. Hernández Colón, <u>Práctica Jurídica de Puerto Rico: Derecho Procesal Civil</u>, sec. 2007, LexisNexis, 1999.

del Tribunal al presentarse la demanda.[30] "Se trata de un trámite ministerial, automático, subsiguiente a la presentación de la demanda, como evento inmediato que da inicio a la acción civil."[31]

Desde Banco Metropolitano v. Berríos Marcano, *supra*, este Tribunal ha reconocido reiteradamente la facultad discrecional que ostenta el foro primario, al amparo de la Regla 68.2 de Procedimiento Civil[32], para prorrogar por un período razonable el término de seis (6) meses prescrito por la Regla 4.3(b), *supra*, inclusive cuando este remedio se solicite después de expirado el término reglamentario, **siempre y cuando la parte promovente demuestre justa causa para ello y no haya abuso de discreción por parte del foro primario.**[33] La discreción es el instrumento más poderoso reservado a los jueces para hacer justicia[34]; sin embargo, ésta no puede ejercitarse en el vacío ni de modo arbitrario, sino que invariablemente debe haber razón bien fundada que mueva la conciencia judicial hacia la concesión de la

---

[30] Véase Regla 4.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III; Datiz Vélez, *supra*; Monell Cardona, *supra*, pág. 24.

[31] Monell Cardona v. Aponte, *supra*.

[32] 32 L.P.R.A. Ap. III, R. 68.2

[33] Véase Monell Cardona, *supra*; First Bank of P.R. v. Inmobiliaria Nacional, *supra*, pág. 914; López v. Porrata-Doria, 140 D.P.R. 96, 102 (1996); In re Fernández Torres, 122 D.P.R. 859 (1988); Lugo Rodríguez v. Municipio, 111 D.P.R. 679, 680 (1981); Banco Metropolitano v. Berríos Marcano, *supra*.

[34] Banco Metropolitano v. Berríos Marcano, *supra*, pág. 725.

prórroga solicitada.[35] Así pues, recae sobre la parte actora la carga de justificar, con referencia a los hechos y circunstancias meritorias del caso, la razón o motivo para no haber emplazado dentro del término original prescrito por la Regla 4.3(b), *supra*.[36] A los fines de que un tribunal revisor pueda descargar su función cuando se recurra contra una decisión respecto a este asunto, la moción de la parte promovente deberá exponer, de modo afirmativo y en forma específica, la razón constitutiva de justa causa para la extensión del término ya vencido, sobre la cual pueda operar la discreción judicial; justificación que necesariamente debe estar atada al sentido de justicia que impregna la reclamación del demandante.[37]

Como vemos, la Regla 4.3(b), *supra*, dispone que sólo se concederá una prórroga para diligenciar un emplazamiento si mediare "justa causa" y ésta se solicitara dentro del plazo reglamentario de seis (6) meses. **Sin embargo, a través de su jurisprudencia, este Tribunal ha 'flexibilizado' los requerimientos de dicha regla para brindarle la oportunidad a los demandantes, de mediar justa causa para ello, de solicitar una extensión del término reglamentario <u>después de agotado el plazo original, de manera que no proceda la</u>**

---

[35] <u>Monell Cardona</u>, *supra*; <u>Lugo Rodríguez v. Municipio</u>, *supra*; <u>Banco Metropolitano v. Berríos Marcano</u>, *supra*.

[36] <u>Monell Cardona</u>, *supra*, pág. 27; <u>First Bank of P.R. v. Inmobiliaria Nacional</u>, *supra*; <u>Lugo Rodríguez v. Municipio</u>, *supra*, págs. 680-81.

[37] <u>First Bank of P.R.</u>, *supra*, pág. 915; <u>véase también, Lugo Rodríguez v. Municipio</u>, *supra*.

**severa sanción de desistimiento de la demanda con perjuicio.** No obstante, para ello siempre será necesario que la parte demandante justifique con especificidad la razón o motivo para su inacción dentro del plazo original.

A la luz de la normativa procesal antes esbozada, analicemos la actuación del foro intermedio apelativo de dar a la señora Rivera Ocasio por desistida con perjuicio de su demanda en cuanto a los recurridos, señores José Luis y Jason Pérez Padilla.

La parte demandante, aquí peticionaria, sostiene que el entonces Tribunal de Circuito de Apelaciones erró al así proceder. Arguye que un examen de las circunstancias del presente caso, a tenor con la jurisprudencia interpretativa de la Regla 4.3(b) de Procedimiento Civil, *supra*, revela que la drástica sanción impuesta por el foro intermedio apelativo era **improcedente**. Plantea, asimismo, que al autorizar el emplazamiento por edictos de los aquí recurridos, el foro primario lo que hizo fue ejercitar correctamente la facultad discrecional que le reconoce nuestro ordenamiento para extender el término reglamentario de seis (6) meses provisto por la Regla 4.3(b), *supra*, para el diligenciamiento de los emplazamientos.[38] Por el contrario, los recurridos sostienen que el foro intermedio apelativo actuó correctamente al desestimar con perjuicio la demanda toda vez que la parte peticionaria no demostró la razón constitutiva de "justa causa" que le impidió solicitar

---

[38] Véase Petición de *certiorari* ante nos, págs. 11-13.

y diligenciar los emplazamientos por edictos de conformidad con la Regla 4.3(b), *supra*.

Según el trasfondo procesal previamente consignado, la señora Rivera Ocasio presentó su demanda sobre división de comunidad de bienes contra los causahabientes del finado José M. Pérez Rivera con fecha de 1 de diciembre de 2000. Ese mismo día, la Secretaría del Tribunal de Primera Instancia expidió el emplazamiento dirigido a la codemandada Iris Nereida Pérez Padilla, hermana de los recurridos. En aquel entonces, la señora Rivera Ocasio no sometió, para su correspondiente expedición, los proyectos de emplazamiento dirigidos a los restantes componentes de la sucesión, los codemandados José Luis y Jason Pérez Padilla. Ello porque, a pesar de estar al tanto de que éstos vivían en Estados Unidos, alegadamente ignoraba sus respectivas direcciones residenciales. El emplazamiento a la codemandada Pérez Padilla fue diligenciado personalmente el 10 de diciembre del mismo año; esto es, dentro del término de seis (6) meses prescrito por la Regla 4.3(b), *supra*.

No fue hasta el 3 de julio de 2001, siete (7) meses después de haber radicado su demanda, que la señora Rivera Ocasio acudió al foro primario solicitando que prorrogara el término reglamentario para diligenciar los emplazamientos de los recurridos. En apoyo de su solicitud, adujo que todavía desconocía las direcciones residenciales de éstos, a pesar de habérselas requerido a su hermana, la codemandada Iris

Nereida Pérez Padilla. De igual forma, anticipó que, de no obtener la información requerida, habría de pedir seguidamente autorización al tribunal para diligenciar los emplazamientos de los recurridos **mediante edictos**. El foro primario acogió la solicitud de la parte demandante, concediendo una prórroga de treinta (30) días a contarse desde la fecha en que la codemandada Pérez Padilla le suministrara las direcciones en cuestión.

Así las cosas, mediante carta fechada 30 de agosto de 2001, la representación legal de la codemandada Pérez Padilla le proveyó a la demandante las direcciones exactas de los codemandados no residentes en Puerto Rico. **A pesar de lo anterior, no fue hasta el 4 de septiembre de 2002, esto es, casi un año después de expirada la prórroga concedida por el foro primario para el diligenciamiento de los emplazamientos, que la parte demandante presentó ante dicho foro una moción para emplazar por medio de edictos a los señores José Luis y Jason Pérez Padilla.** En esta ocasión, arguyó que no había actuado dentro del término de la prórroga otorgada pues entendía que los procedimientos ante el Tribunal de Primera Instancia estaban paralizados; ello porque a la fecha de la concesión de la prórroga, el foro intermedio apelativo aún no había dilucidado la controversia en torno a la falta de jurisdicción sobre los señores Pérez Padilla, ni la cuestión sobre la invalidez de la orden de embargo dictada *ex parte* por el foro primario. Posteriormente, reiteró que había estimado "razonable y

prudente" aguardar por la sentencia del foro intermedio apelativo resolviendo dichos asuntos para entonces continuar con las gestiones dirigidas a emplazar a los aquí recurridos.[39]

**Transcurridos casi dos (2) años de haberse interpuesto la demanda de marras**, el 9 de octubre de 2002, el Tribunal de Primera Instancia dispuso finalmente que los emplazamientos de los codemandados José Luis y Jason Pérez Padilla se hicieran mediante edictos, los cuales fueron publicados el 23 de octubre de 2002 en el periódico El Nuevo Día.

En vista del cuadro procesal antes descrito, no podemos más que coincidir con el criterio del foro intermedio apelativo de que, **evidentemente**, la parte demandante no desplegó la diligencia razonable para diligenciar los emplazamientos de los aquí recurridos dentro del término original dispuesto por la Regla 4.3(b), ni en el término de la prórroga dispuesta a esos fines por el Tribunal de Primera Instancia. La señora Rivera Ocasio incumplió con ambos términos, careciendo de "justa causa" para así hacerlo.[40]

---

[39] Véase Apéndice, págs. 192-94.

[40] A poco que examinamos el expediente del caso que nos ocupa, se desprende que la parte demandante tenía conocimiento de las direcciones exactas de los recurridos al menos desde el 30 de agosto de 2001. En consecuencia, ésta tuvo casi un año, antes de formular su solicitud de emplazamiento por edictos, para intentar emplazar personalmente a los codemandados no residentes en Puerto Rico, mas no lo hizo.

Entendemos que la parte demandante tenía disponibles los distintos mecanismos de descubrimiento de prueba contemplados en nuestro ordenamiento procesal civil para obtener **oportunamente** las últimas direcciones conocidas de los aquí recurridos y de ahí proceder a emplazarlos conforme a derecho.[41] A modo de ejemplo, la señora Rivera Ocasio bien pudo notificarle un interrogatorio a la codemandada Iris Nereida Pérez Padilla requiriéndole la información en cuestión.

En el caso ante nos, la peticionaria sostiene que la codemandada Pérez Padilla tardó aproximadamente ocho (8) meses en proveerle las direcciones de los recurridos, a pesar de los múltiples requerimientos que se le hicieran a a esos efectos, incluyendo los efectuados durante la toma de una deposición.[42] Sin embargo, cabe destacar que nada en el expediente nos convence de que los múltiples requerimientos en efecto se hicieran. Reconocemos que, conforme a la Regla 67.4 de Procedimiento Civil[43], las partes no tienen la obligación procesal de presentar en el tribunal, entre otros documentos, los interrogatorios que le notifiquen a la parte contraria como parte del descubrimiento de prueba, así como las contestaciones a éstos, hasta tanto sea necesaria su utilización en los

---

[41] Véase, a modo ilustrativo, Nuñez González v. Jiménez Miranda, 122 D.P.R. 134, 143 (1988).

[42] Véase Apéndice, pág. 192.

[43] Véase 32 L.P.R.A. Ap. III, R. 67.4

procedimientos o su radicación sea ordenada por el tribunal *motu proprio* o a moción de parte interesada. No obstante, consideramos que de haber la señora Rivera Ocasio realizado los diversos requerimientos que alega, ésta debió hacerlo constar ante el foro primario mediante la presentación de los escritos o documentos pertinentes, de manera que demostrara las diligencias efectuadas para localizar a los recurridos y emplazarles oportunamente.

Además, no podemos perder de perspectiva que la codemandada Pérez Padilla en forma alguna venía obligada a cooperar con la demandante-peticionaria en el diligenciamiento de los emplazamientos a los restantes miembros de la sucesión.[44]

Ahora bien, aunque nos reafirmamos en que la parte demandante, aquí peticionaria, no actuó con la debida diligencia para emplazar oportunamente a los aquí recurridos y tampoco adujo una razón válida en derecho para

_____

[44] Dado que el emplazamiento es un imperativo constitucional del debido proceso de ley, hemos resuelto que en forma alguna viene obligado un demandado a cooperar con el demandante en la realización por éste del diligenciamiento del emplazamiento. Los demandados tienen un derecho a ser emplazados conforme a derecho y existe en nuestro ordenamiento una política pública de que la parte demandada debe ser emplazada debidamente para evitar fraude y que se utilicen procedimientos judiciales para privar a una persona de su propiedad sin el debido proceso de ley. Véase <u>Quiñones Román v. Compañía ABC</u>, *supra*, pág. 375; <u>First Bank of P.R. v. Inmobiliaria Nacional</u>, *supra*, pág. 916. Esta política pública pone todas las exigencias y requisitos sobre los hombros del demandante, no sobre los demandados. Véase <u>First Bank of P.R. v. Inmobiliaria Nacional</u>, *supra*. **A causa de lo anterior, le corresponde al demandante realizar a través de los medios provistos por ley, <u>todos</u> los actos necesarios para conferir al tribunal completa jurisdicción sobre la persona del demandado. <u>Véase Álvarez Elvira</u>**, *supra*.

ello, **no podemos refrendar el curso de acción tomado por el entonces Tribunal de Circuito de Apelaciones de dar a la parte actora por desistida con perjuicio de su demanda en cuanto a los recurridos, señores José Luis y Jason Pérez Padilla. La determinación del foro intermedio apelativo tiene el efecto de una adjudicación en los méritos, con el consabido resultado de que tendrá autoridad de cosa juzgada. [45] Por la naturaleza particular de la situación fáctica ante nos, la aplicación literal por parte del foro intermedio apelativo de la norma adjetiva establecida en la Regla 4.3(b) de Procedimiento Civil,** *supra*, **conduce al resultado antijurídico de la indivisión indefinida de una comunidad de bienes.** La decisión del tribunal *a quo* revela cómo las normas procesales, en determinadas ocasiones, parecen adquirir vida propia, sin que haya razón válida que así lo amerite.

Reiteramos, una vez más, que al interpretar nuestras Reglas de Procedimiento Civil hay que tener presente, como principio rector, que éstas no tienen vida propia, sólo existen para viabilizar la consecución del derecho sustantivo de las partes.[46] En ocasiones, en nuestro afán de hacer valer las reglas, las aplicamos literalmente; sin embargo, debemos evitar convertirnos en prisioneros de la

---

[45] Véase R. Hernández Colón, *op cit.*, sec. 2007.

[46] Véase Pérez Santos v. Comisión de Relaciones del Trabajo del Servicio Público, 2002 T.S.P.R. 133; Soc. de Gananciales v. García Robles, 142 D.P.R. 241, 258 (1997); Núñez González v. Jiménez Miranda, *supra*, pág. 144; Dávila v. Hosp. San Miguel, Inc., 117 D.P.R. 807, 816 (1986).

tiesa construcción de una norma procesal. Cuando una regla procesal no pueda armonizarse en su aplicación con el derecho sustantivo de una parte, la primera forzosamente tiene que ceder pues no puede dar base a que el derecho sustantivo que viene llamada a viabilizar sucumba ante ésta.[47]

Las alegaciones contenidas en la demanda presentada por la señora Rivera Ocasio pretenden, mediante la acción *communi dividundo*, que se ordene a los codemandados, miembros de la sucesión de José M. Pérez Rivera, a proceder con la división de la comunidad de bienes resultante de la herencia y que se le entregue a la demandante un cincuenta por ciento (50%) de las ganancias producto de su esfuerzo y trabajo durante la relación concubinaria pública que mantuviera con el causante por espacio de diecisiete (17) años.[48]

---

[47] Véase <u>M & R Developers, S.E. v. Banco Gubernamental de Fomento</u>, 2001 T.S.P.R. 34; <u>Moa v. E.L.A.</u>, 100 D.P.R. 573, 586 (1972). <u>Véase además</u>, el Art. V, sec. 6 de la Constitución del Estado Libre Asociado de Puerto Rico, 1 L.P.R.A., el cual dispone, en lo pertinente, que: "El Tribunal Supremo adoptará para los tribunales, reglas de evidencia y de procedimiento civil y criminal que **no menoscaben**, amplíen o modifiquen derechos sustantivos de las partes. (Énfasis suplido).

[48] El interés propietario de los concubinos con respecto a los bienes adquiridos o que hayan incrementado de valor vigente la relación, ha sido reconocido en nuestro ordenamiento. Dicho interés propietario puede surgir como pacto expreso; como pacto implícito que se desprende espontáneamente de la relación humana y económica existente entre las partes durante el concubinato, y como un acto justiciero para evitar el enriquecimiento injusto. <u>Véase Cruz Ayala v. Rivera Pérez</u>, 141 D.P.R. 44, 52 (1996) y casos allí citados; <u>véase también</u> E. Vázquez Bote, <u>Derecho Civil</u>

El Art. 326 del Código Civil de Puerto Rico establece que **"[h]ay comunidad cuando la propiedad de una cosa o de un derecho pertenece pro indiviso a varias personas."** [49] (Énfasis suplido.) Toda vez que poseen características comunes que las enlazan en similaridad, nuestro Código Civil ordena que las reglas concernientes a la división de la comunidad hereditaria, siempre que no haya conflicto o incompatibilidad, serán aplicables a la división entre los partícipes de la comunidad.[50]

De otra parte, en cuanto a la división de la cosa común se refiere, el Art. 334 del Código Civil preceptúa lo siguiente:

> **[n]ingún copropietario está obligado a permanecer en la comunidad. Cada uno de ellos podrá pedir en cualquier tiempo que se divida la cosa común.** Esto no obstante, será válido el pacto de conservar la cosa indivisa por tiempo determinado, que no exceda de diez años. Este plazo podrá prorrogarse por nueva convención.[51] (Énfasis suplido).

La acción para pedir la división de la propiedad común es **imprescriptible**. Así lo dispone el Art. 1865 de nuestro Código Civil.[52] Citando con aprobación los comentarios de

---

de Puerto Rico, San Juan, FAS, Ediciones Jurídicas, 1974, Tomo II, págs. 283-84.

[49] Véase 31 L.P.R.A. sec. 1271; Ortiz Roberts v. Ortiz Roberts, 103 D.P.R. 628, 631 (1975).

[50] Véase Art. 340 del Código Civil, 31 L.P.R.A. sec. 1285; Díaz v. Registrador, 107 D.P.R. 233, 236 (1978); Cruz v. Sucesión Landrau Díaz, 97 D.P.R. 578, 588 (1969); Shivell v. Barber y Boscio, 92 D.P.R. 400, 410 (1965).

[51] 31 L.P.R.A. sec. 1279

[52] Véase 31 L.P.R.A. sec. 5295. El citado artículo lee como sigue: "No prescribe entre coherederos, condueños o

Manresa y Scaevola, este Tribunal ha reconocido que nuestro

Código Civil desalienta y repudia la comunidad, fuente de

desavenencias que dificultan su administración y degenera en

obstáculo al fomento de la propiedad, la industria y la

riqueza. Hacia el objetivo de extinguir la copropiedad se

dirige, entre otros, el antedicho Art. 334, *supra*, al

declarar que **ningún copropietario estará obligado a**

**permanecer _ad perpetuam_ en indivisión forzosa, expresión**

**ésta que concreta la imprescriptibilidad de las acciones**

**para solicitar la división de la propiedad común**.[53]

---

propietarios de fincas colindantes la acción para pedir la partición de la herencia, la división de la cosa común o el deslinde de las propiedades contiguas."; véase además, Ortiz Roberts v. Ortiz Roberts, *supra*, pág. 630.

[53] Véase Ortiz Roberts, supra. Sobre este particular, señala Vázquez Bote lo siguiente:

Es fórmula ampliamente repetida, que las situaciones de conjunción o concurso subjetivo sobre un determinado objeto resultan antieconómicas, ya que suelen provocar dificultades de administración y, desde luego, un desmerecimiento en el valor en cambio. En un plano jurídico, suele expresarse que, no obstante la posible perfección que pueda alcanzarse en la regulación –prevención– de tales situaciones, el conflicto no es inevitable; por el contrario, se producen abundantes ocasiones de desavenencias, fuente de correspondientes perturbaciones y de litigios. **De ahí que los Ordenamientos tiendan siempre a facilitar la desaparición de las situaciones de comunidad, reconociendo amplias oportunidades de provocar la división de la cosa tenida en común. Cada copropietario, pues, puede pedir "en cualquier tiempo que se divida la cosa común" (art. 334, párrafo primero, C.c.), no estando ningún copropietario obligado a permanecer en la comunidad (art. 334, párrafo primero, proposición primera, C.c.).**

No establece la ley ningún requisito especial para provocar la división de la cosa común. El hecho de una situación de indivisión autoriza desde luego a pretender la división misma, incluso aunque con ello

Por último, es requisito esencial para el ejercicio de la acción *communi dividundo* que ésta se dirija contra todos los partícipes o comuneros con el fin de que no resulte ineficaz la sentencia que se dicte para hacer efectiva la división de la cosa poseída *pro indiviso* y en común.[54] **Por ende, para que pueda prosperar la acción ejercitada por la señora Rivera Ocasio, es necesario que ésta haya traído a la jurisdicción del tribunal a todos los partícipes de la comunidad, quienes son partes indispensables en el pleito sin cuya presencia no puede adjudicarse la controversia.**[55]

---

se origine un desmerecimiento de la cosa, pues, como tiene declarado la jurisprudencia, "el derecho del comunero a no permanecer en la comunidad no está supeditado a que la división no haga desmerecer el valor de la cosa poseída en común; sólo en el caso de que ésta se destruya es que puede coartarse y anularse aquel derecho." . . .

A este espíritu responde el art. 1.865, C.c., al declarar que no prescribe la acción para dividir la cosa común: "no prescribe entre coherederos, condueños o propietarios de fincas colindantes la acción para pedir la partición de la herencia, la división de la cosa común o el deslinde de las propiedades contiguas". Véase E. Vázquez Bote, Tratado teórico, práctico y crítico de derecho privado puertorriqueño, New Hampshire, Butterworth Legal Publishers, 1993, Tomo VIII, Derechos Reales II, págs. 19-20. (Énfasis suplido).

[54] Véase Cabassa v. Registrador, 116 D.P.R. 861, 866 (1986); Passalacqua v. Passalacqua, 87 D.P.R. 587, 595-96 (1963).

[55] Véase Sucesión Collazo v. Borrás, 26 D.P.R. 482 (1918). Una parte indispensable es aquella persona cuyos derechos e intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada estando dicha persona ausente del litigio. Véase Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III; Fred Reyes v. E.L.A., 150 D.P.R. 599 (2000); Cepeda Torres v. García Ortiz, 132 D.P.R. 698 (1993).

En el caso que hoy nos atañe, enfrentamos la dificultosa tarea de armonizar dos disposiciones, una de carácter puramente procesal y otra sustantiva, que claramente no son conciliables entre sí. De una parte, tenemos el mandato expreso de la Regla 4.3(b) de Procedimiento Civil, *supra*, de dar a la peticionaria por desistida con perjuicio de su reclamación contra los recurridos, por ésta haber diligenciado sus emplazamientos **inoportunamente** sin que mediara "justa causa" para ello. De otra, tenemos el derecho sustantivo absoluto que le asiste a la peticionaria, consagrado en el  Art. 334 del Código Civil, *supra*, a no permanecer *ad perpetuam* en comunidad forzosa con los codemandados; derecho que, dicho sea de paso, es **imprescriptible**.

**Somos del criterio que, en situaciones tan particulares como la de autos, merecedoras de un enfoque especial, la norma procesal que emana de la Regla 4.3(b), *supra*, no puede tener el efecto de imposibilitar que un comunero ejercite su derecho sustantivo absoluto a solicitar la división de la comunidad de bienes en cualquier momento.** Inclinarnos por una aplicación literal de las disposiciones de la Regla 4.3(b) al caso que nos ocupa, conduciría, en la práctica, a la derrota de un derecho esencial concebido por el Art. 334 del Código Civil*, supra.* Curso de acción que, con toda certeza, le haría un flaco servicio a nuestro deber primordial de hacer justicia.

En vista de que en cualquier tiempo, pues, se puede ejercitar la potestad disolutoria de la comunidad de bienes, sin que obste a ello cualquier circunstancia intercedente, es imperativo que, como acto justiciero, rechacemos una aplicación de la Regla 4.3(b) con excesivo rigor literal y, en su lugar, garanticemos el derecho sustantivo de la peticionaria a la *actio communi dividundo*.

De prevalecer la decisión del foro intermedio apelativo de desestimar con perjuicio la demanda de la señora Rivera Ocasio en cuanto a los aquí recurridos, dictamen que tendría efecto de cosa juzgada, ello impediría que la comunidad de bienes existente entre la señora Rivera Ocasio y los codemandados, como consecuencia de la muerte del causante, sea dividida. Es decir, la actuación del foro intermedio apelativo conduciría al inaceptable resultado de que la parte aquí peticionaria tuviera que permanecer *ad perpetuam* en indivisión forzosa con los codemandados.

Analizada la situación fáctica procesal del presente caso, a la luz de los principios normativos que preceden, concluimos que el curso de acción más justo y apropiado era, precisamente el adoptado por el foro primario, permitir el diligenciamiento, aunque tardío, de los emplazamientos a los recurridos de forma tal que la parte demandante pudiera ejercer plenamente la *actio communi dividundo* contra todos los partícipes de la comunidad. Por consiguiente, erró el entonces Tribunal de Circuito de Apelaciones al desestimar

con perjuicio la demanda de la peticionaria, en cuanto a los

aquí recurridos.


                              **EFRAIN E. RIVERA PEREZ**
                                 **JUEZ ASOCIADO**